968 A.2d 1104

**Karen HALLORAN**

v.

**MONTGOMERY COUNTY DEPARTMENT
OF PUBLIC WORKS, et al.**

**No. 219, Sept. Term, 2008.**

Court of Special Appeals of Maryland.

March 31, 2009.

176

H. David Leibensperger (Craig Meyers, Berman, Sobin & Gross, LLP on the brief), Gaithersburg, for appellant.

Erik J. Delfosse (Douglas F. Gansler, Attorney General on the brief), Baltimore, Karen L. Federman Henry (Christine M. Collins, Mark P. Hansen, Deputy County Atty., Leon Rodriguez, County Attorney on the brief), Rockville, for appellee.

Panel: DEBORAH S., EYLER, WOODWARD and SHARER, J. FREDERICK, (Retired, Specially Assigned), JJ.

WOODWARD, J.

Appellant, Karen Halloran, sued appellee, Montgomery County ("the County"), and appellee, the State of Maryland ("the State"), as well as WGL Holdings d/b/a Washington Gas ("Washington Gas"), and the Washington Suburban Sanitary Commission ("WSSC"),[1] to recover damages for injuries sustained when she fell after tripping over irregular pavement in a crosswalk in Montgomery County. After the County moved for summary judgment asserting that Halloran had not complied with the Local Government Tort Claims Act ("LGTCA"),[2] the Circuit Court for Montgomery County entered judgment in favor of the County. Before trial, all of the other defendants, except for the State, were dismissed from the case. At the conclusion of the trial, a jury returned a verdict in favor of the State.

On appeal, Halloran presents four issues for our review, which we have consolidated into three questions:

1. Did the circuit court err in concluding that Halloran had not substantially complied with the notice provision of the LGTCA?

2. Did the circuit court abuse its discretion in concluding that Halloran failed to demonstrate good cause to waive the notice provision of the LGTCA?

---

1. Neither Washington Gas nor WSSC are parties in the instant appeal.

2. All references to the LGTCA herein are to Md.Code (1973, 2006 Repl.Vol., 2008 Supp.), § 5–301 *et seq.* of the Cts. & Jud. Proc. Art.

3. Did the trial court commit reversible error in admitting testimony regarding repairs to the road condition that caused her injuries?

For the following reasons, we shall affirm the judgment of the circuit court.

## *BACKGROUND*

On October 18, 2004, Halloran fell and was seriously injured when she tripped on irregular pavement in a crosswalk at Old Georgetown Road and Edgemoor Lane in Montgomery County. In a letter dated October 22, 2004, Halloran informed the Montgomery County Department of Public Works and Transportation ("DPWT") of the accident. She wrote:

> I am writing to inform you of a serious hazard located in the crosswalk intersection of Old Georgetown Road and Edgemoor Road in Bethesda, Maryland. There is a severe depression in the asphalt; which could result in personal injury to the numerous pedestrians who cross this road daily.

> I personally was hurt at this location on Monday, October 18, 2004 at approximately 12:30 pm. I was walking westbound from the 7500 block to the Chipotles Restaurant at the corner of the 7600 block of Old Georgetown Road during my lunch hour. I fell in the crosswalk due to the irregular pavement. The road appeared to have been dug up previously and was quickly "repaired" without bringing the area flush with the rest of the roadway. I now have a sprained left foot big toe and a broken ankle on my right foot. I have missed 2.5 days of work because of this incident and have suffered pain from the injuries. I have attached pictures of my injury and the unsafe paving of the location mentioned above.

> Please have this pavement repaired immediately to make the concave area flush with the rest of the roadway. I do not want anyone else to have to suffer the injuries I've

sustained or worse. Thank you for you immediate attention to this matter.

DPWT responded to Halloran, thanking her for "letting [them] know about the condition" and conveying that they "regret [the] injury." The letter explained that Halloran's "letter was faxed to the Maryland State Highway Administration's (MSHA) district maintenance office, because the crosswalk is within the State's right-of-way." Nonetheless, DPWT "agree[d] that this [was] a dangerous situation, [and, as a result] a Highway Maintenance crew . . . repaired the deteriorated area to ensure pedestrian safety."

On October 25, 2004, Halloran filed a "Notice of Claim Form" against the State. In the form, Halloran recited the time, place, and nature of her fall, and noted that she was "seeking [her] medical bills to be paid in full. Other damages to be determined." [3] In a letter dated October 28, 2004, the State acknowledged receipt of Halloran's claim, and advised Halloran that it would "be investigating [her] claim." On November 22, 2004, the State responded to Halloran with the results of its investigation. According to the letter, the "claim was carefully investigated," but that investigation determined "that the State was not at fault in the incident." Although the letter did not elaborate on this determination, it "suggest[ed] [Halloran] refer [her] claim to: Washington Gas."

In a letter dated January 11, 2005, Halloran's counsel informed Washington Gas that Halloran "believe[d] that Washington Gas may be responsible for the condition of [the] roadway" that caused Halloran to fall.

In a letter dated July 7, 2005, Halloran's counsel informed the Montgomery County Executive of his representation of

---

3. Halloran's "Notice of Claim" against the State was not in evidence before the circuit court at the time that the court considered the County's motion for summary judgment. For the reasons set forth in the standard of review, the contents of that document cannot be considered in our review of the circuit court's decision.

Halloran and recited the basic facts of Halloran's injury. The letter inquired as to "whether or not [the] location [where the fall occurred] [was] actually County responsibility." The letter was mailed certified mail, return receipt requested.[4]

The Office of the County Attorney for Montgomery County responded by letter dated July 28, 2005. The County Attorney noted that it had "received the notice of claim" and would be "referring this matter to Schaffer Companies," the County's claims adjuster. Additionally, the County Attorney stated that "a review of [Halloran's] letter indicates that [Halloran's] notice of claim may be untimely under State law."

The Schaffer Companies denied Halloran's claim against the County in a letter dated April 20, 2006. According to The Schaffer Companies, "[i]t appear[ed] that [Halloran] fell at a depression that was either caused by the Washington Suburban Sanitary Commission or Washington Gas."

On October 25, 2006, Halloran filed suit against the County, Washington Gas, and WSSC. The County and WSSC moved to dismiss or in the alternative for summary judgment on the grounds that Halloran had failed to comply with the LGTCA. After a hearing on March 26, 2007, the circuit court granted the County's motion for summary judgment. The circuit court declined to rule on WSSC's motion, pending discovery.

On April 2, 2007 Halloran filed a separate complaint against the State based on the same injuries and circumstances. On April 27, 2007, Halloran voluntarily dismissed WSSC from the original suit, and the two complaints were consolidated. On December 20, 2007, Halloran voluntarily dismissed Washington Gas from the suit, leaving only the State as a defendant. The case was tried before a jury on March 10 and 11, 2008, at the conclusion of which the jury rendered a verdict in favor of the State. A final judgment was entered on March 13, 2008. This timely appeal followed.

---

4. Halloran's counsel also attached a copy of the October 22, 2004 letter.

## DISCUSSION

### 1.

### Did the circuit court err in concluding that Halloran had not substantially complied with the notice provision of the LGTCA?

Halloran argues that her claim against the County should have been allowed to proceed because she substantially complied with the LGTCA. According to Halloran, because she provided DPWT with the information required by the notice provision of the LGTCA, and DPWT was able to conduct an investigation of the roadway, the purpose of the LGTCA's notice provision was fulfilled. Halloran additionally argues that the County waived any argument that Halloran failed to provide notice under the LGTCA, because the County did not allege that its investigation was impeded.

The County responds that the circuit court correctly found that Halloran had failed to satisfy the notice requirement. Specifically, the County argues that Halloran failed to demonstrate either substantial compliance with the notice provision or good cause for not serving timely notice pursuant to the LGTCA. According to the County, Halloran's October 22, 2004 letter was not substantially compliant because it did not state a tort claim and was not directed to an entity responsible for investigating tort claims.

### Standard of Review

"When reviewing the grant or denial of a motion for summary judgment we must determine whether a material factual issue exists, and all inferences are resolved against the moving party." *United Servs. Auto. Ass'n v. Riley*, 393 Md. 55, 66, 899 A.2d 819 (2006). We must "examine[ ] the same information from the record and determine[ ] the same issues of law as the trial court." *Id.* at 67, 899 A.2d 819. Where "the facts surrounding the notice issue are essentially undisputed," this Court "review[s] the circuit court's decision *de novo* to determine if it was legally correct." *Wilbon v. Hunsicker*, 172

Md.App. 181, 198, 913 A.2d 678 (2006), *cert. denied,* 398 Md. 316, 920 A.2d 1060 (2007).

## The LGTCA

The LGTCA provides that "an action for unliquidated damages may not be brought against a local government or its employees unless the notice of the claim . . . is given within 180 days after the injury." § 5–304(b). "The notice shall be in writing and shall state the time, place, and cause of the injury." § 5–304(c)(3). In Montgomery County, the notice must be provided in person, or by certified mail, return receipt requested, to "the county commissioner, county council, or corporate authorities . . . or . . . the County Executive." § 5–304(c)(1).[5] The notice requirement is "a condition precedent to maintaining an action against a local government or its employees." *Rios v. Montgomery County,* 386 Md. 104, 127, 872 A.2d 1 (2005). "[T]he notice requirement operates inde-

---

5. Relevant portions of Section 5–304 are as follows:

**§ 5–304. Actions for unliquidated damages.**

(a) *Scope.*—This section does not apply to an action against a non-profit corporation described in § 5–301(d)(24) or (25) of this subtitle or its employees.

(b) *Notice required.*—Except as provided in subsections (a) and (d) of this section, an action for unliquidated damages may not be brought against a local government or its employees unless the notice of the claim required by this section is given within 180 days after the injury.

(c) *Manner of giving notice.*—(1) Except in Anne Arundel County, Baltimore County, Harford County, and Prince George's County, the notice shall be given in person or by certified mail, return receipt requested, bearing a postmark from the United States Postal Service, by the claimant or the representative of the claimant, to the county commissioner, county council, or corporate authorities of a defendant local government, or:

\* \* \*

(iii) In Montgomery County, to the County Executive.

\* \* \*

(3) The notice shall be in writing and shall state the time, place, and cause of the injury.

(d) *Waiver of notice requirement.*—Notwithstanding the other provisions of this section, unless the defendant can affirmatively show that its defense has been prejudiced by lack of required notice, upon motion and for good cause shown the court may entertain the suit even though the required notice was not given.

pendent of the limitations period that applies generally to the filing of suit." *Rios v. Montgomery County,* 157 Md.App. 462, 480, 852 A.2d 1005 (2004), *aff'd,* 386 Md. 104, 872 A.2d 1 (2005).

 The Court of Appeals has stated that the purpose of the notice requirement is "to have the claimant furnish the municipal body with sufficient information to permit it to make an investigation in due time, sufficient to ascertain the character and extent of the injury and its responsibility in connection with it." *Jackson v. Bd. of County Comm'rs,* 233 Md. 164, 167, 195 A.2d 693 (1963). The notice requirement is intended "to protect the municipalities and counties of the State from meretricious claimants and exaggerated claims." *Bartens v. Mayor and City Council of Baltimore,* 293 Md. 620, 626, 446 A.2d 1136 (1982).

## Substantial Compliance

 Strict compliance with the notice requirement is not necessary; substantial compliance is sufficient. *White v. Prince George's County,* 163 Md.App. 129, 144–45, 877 A.2d 1129, *cert. denied,* 389 Md. 401, 885 A.2d 825 (2005). "[A] litigant is excused from strict compliance with the notice obligation, *so long as the purpose of the notice statute was fulfilled* by substantial compliance with the statutory requirements." *Id.* at 144, 877 A.2d 1129 (quotation omitted) (emphasis added). "Substantial compliance requires some effort to provide the requisite notice and, in fact, it must be provided, albeit not in strict compliance with the statutory provision." *Id.* at 145, 877 A.2d 1129 (internal quotation omitted). "However, when the notice does not apprise the *proper officials* that the [p]laintiff is pursuing a claim, there is not substantial compliance." *Bibum v. Prince George's County,* 85 F.Supp.2d 557, 564 (D.Md.2000) (emphasis added).

*Jackson* was the first Maryland case to articulate the doctrine of substantial compliance with the notice requirement of the LGTCA. In *Jackson,* the claimant sought to recover damages sustained in a collision with a county dump truck. 233 Md. at 166, 195 A.2d 693. The claimant first provided oral

notice to an assistant county attorney and then sent written notice by ordinary mail to the county commissioners. *Id.* The county argued that "there was noncompliance with two essential requirements—there was no notice given of [the claimant's] claim, only of a claim for property damage and, ... the notice was not delivered either in person or by registered mail" as required by statute. *Id.* at 167, 195 A.2d 693. The claimant's written notice read:

> We represent Phyllis and William A. Jackson, Jr., and their collision insurance carrier, Interstate Insurance Company, **in a claim for damages against Anne Arundel County Public Works** arising out of a collision occurring on January 18, 1962, at Solley Road and Powhatan Beach Road with a County Roads truck operated by Joseph Frank Havranek.

*Id.* at 166–67, 195 A.2d 693 (emphasis added). The Court of Appeals found "substantial gratification of the purpose of the statute" in regard to both the content of the notice and its delivery. *Id.* at 167–68, 195 A.2d 693. The Court reasoned that the letter, *"which ... said there was a claim for damages against the County,"* and advised of the " 'time, place and cause' " of the injury, "would seem to be literal compliance" or, at a minimum, substantial compliance. *Id.* (emphasis added).

In *White,* the claimant alleged police brutality in the course of his arrest for burglary. 163 Md.App. at 132, 877 A.2d 1129. When the claimant filed suit against Prince George's County and four of its police officers almost three years after the arrest, the circuit court dismissed the case for failure to comply with the notice provision of the LGTCA. *Id.* at 132, 877 A.2d 1129. The claimant conceded that he did not provide notice within the 180 day period, but contended that he had substantially complied with the notice requirement when, within the 180 day period, he sent a letter to the police department complaining of the alleged brutality, which prompted an internal investigation of the matter. *Id.* at 141, 877 A.2d 1129. This Court disagreed:

> [The claimant] did not provide notice to an entity with responsibility for investigating tort claims lodged against the County. Instead, appellant sent notice to the Depart-

ment's Internal Affairs Division [(I.A.D.)]. The content of that complaint pertained to [the claimant's] allegation of police brutality, not to tort claims arising from such conduct.

Moreover, the investigation that ensued was conducted by and for I.A.D., under a wholly separate procedure.... Notice to I.A.D. simply was not notice to the County Attorney or County Solicitor, as required by C.J. § 5–304(b)(2).

*Id.* at 147, 877 A.2d 1129 (footnote omitted). We therefore concluded that the claimant "did not substantially comply with the statutory notice requirement by filing a complaint with I.A.D. about police brutality." *Id.* at 147, 877 A.2d 1129. Because the claimant had also failed to establish good cause, we affirmed the circuit court's dismissal of the case. *Id.* at 158, 877 A.2d 1129.

In *Wilbon*, the estate of Joseph Wilbon, as claimant, sought damages on behalf of Wilbon, who died while in police custody. 172 Md.App. at 185–86, 913 A.2d 678. Four days after Wilbon's death, his mother submitted a "Statement of Incident" to the Civilian Review Board, which was "an independent agency tasked with investigating complaints from the public regarding police misconduct." *Id.* at 191–92, 194, 913 A.2d 678. The statement provided the basic facts of Wilbon's death, including the date and place of the incident. *Id.* at 192, 913 A.2d 678. Later, more than 180 days after Wilbon's death, Wilbon's mother "mailed, by certified mail, a 'Notice of Intent to File Suit' to the Maryland State Treasurer, the Comptroller of the Treasury, and the Commissioner of the" Baltimore City Police Department (BCPD). *Id.* Then, "one year after Wilbon's death, the attorney for Wilbon's estate mailed, by certified mail, and hand-delivered a 'Notice of Claim Form' to the City Solicitor for Baltimore City[,]" which "purported to give notice of a claim pursuant to section 5–304." *Id.* at 193, 913 A.2d 678.

We first considered the matter of whether the claimant strictly complied with the notice requirement. *Id.* at 198, 913 A.2d 678. We noted that the "Statement of Incident" submit-

ted to the Civilian Review Board (CRB) "was *not a claim for damages or a notice of intent to file suit.* It only stated a complaint of police misconduct." *Id.* at 198, 913 A.2d 678 (emphasis added). Because the letter "was a notice of an occurrence involving alleged police brutality, not notice of tort claims arising out of that occurrence" and was "not submit[ted] . . . to the City Solicitor, as required," the claimant had "not strictly compl[ied] with the notice requirement." *Id.* at 199, 913 A.2d 678.

We then considered whether either the "Statement of Incident" or the "Notice of Intent to File Suit" "constituted substantial compliance with the notice requirement under the LGTCA." *Id.* at 200–01, 913 A.2d 678. We noted two problems with the "Notice of Intent to File Suit:" it was sent "to the Commissioner of the BCPD, not to the City Solicitor," and "[m]ore problematic for [the claimant] . . . this letter [was sent] between a month and six weeks beyond the 180–day statutory period." *Id.* at 200, 913 A.2d 678. We concluded that this notice was not substantially compliant because "the courts have not held that a claimant may submit the notice beyond the time for giving such notice." *Id.*

We also rejected the claimant's argument that the "Statement of Incident" submitted to the CRB just days after Wilbon's death constituted substantial compliance, because the CRB was "not an agency of the City of Baltimore or the BCPD." *Id.* at 204, 913 A.2d 678. More importantly, however,

[the] complaint prompted an investigation that was vastly different from an investigation of a tort claim for damages. The BCPD conducted a dual-natured investigation, involving both the Homicide Unit and the [Internal Investigations Division]. The purpose of this investigation was to determine whether a crime had been committed and whether the officers had violated departmental rules and standards of behavior. By contrast, **an investigation into a tort claim for damages involves different issues, including, among other things, legal defenses, the nature and extent of the actual injuries sustained, the causal relationship of the injuries to the alleged misconduct, the likelihood of an**

**award of compensatory and/or punitive damages, the necessity and cost of expert testimony, and litigation strategy.** Therefore, . . . just as the investigation in *White* did not suffice as a claim investigation, the investigation in the present case did not fulfill all of the purposes of the LGTCA's notice requirement.

*Id.* (emphasis added) (quotation and alteration removed). We added that, although "the Commissioner of the BCPD indicated that he was familiar with the case and recognized that it might lead to a lawsuit[,]" "[n]ot every excessive force complaint develops into a civil action." *Id.*

In the case *sub judice*, Halloran concedes that she did not strictly comply with the notice provision of the LGTCA, and we agree. We disagree, however, with Halloran's assertion that she substantially complied with the notice provision. We explain.

The purpose of Halloran's October 22, 2004 letter to DPWT was to inform DPWT of "a serious hazard" and to request that the road be "repaired immediately" to protect others from injury. Nowhere in the letter did Halloran state that she had a "claim" against the County. Although she noted her injuries, she made no allegation that the County was responsible for damages resulting from those injuries. In short, Halloran requested no relief other than that the condition of the road be repaired. Furthermore, the letter was not directed to the proper party under the LGTCA, namely the County Executive. Instead, the letter was addressed to the "Highway Maintenance" division of DPWT. No other entity, particularly the county council, county law office, or "corporate authority," was copied on the letter. In handling the letter, DPWT did not forward Halloran's letter to any of these entities or copy them on DPWT's response. Consequently, the letter failed to inform "the *proper officials* that [Halloran] [was] pursuing a claim." *Bibum,* 85 F.Supp.2d at 564 (emphasis added). Therefore, based on this letter, the County had no reason to, and did not in fact, start "an investigation into a tort claim for damages involv[ing] . . . legal defenses, the nature and extent

of the actual injuries sustained, the causal relationship of the injuries to the alleged misconduct, the likelihood of an award of compensatory and/or punitive damages, the necessity and cost of expert testimony, and litigation strategy." *Wilbon,* 172 Md.App. at 204, 913 A.2d 678. Accordingly, Halloran's October 22, 2004 letter to DPWT did not "apprise [the County] of its possible liability at a time when it could conduct its own investigation," *Faulk v. Ewing,* 371 Md. 284, 298, 808 A.2d 1262 (2002) (internal quotations omitted), and thus did not substantially comply with the notice provision of the LGTCA.

Halloran's July 7, 2005 letter also failed to rise to the level of substantial compliance. The letter was mailed 262 days after the incident, or almost three months after the expiration of the 180 day notice period. *See* § 5–304(b). As a result, the notice did not fulfill the purpose of the notice requirement by permitting a *timely* investigation. If the letter in *Wilbon,* being submitted 30 to 45 days after the 180 day period expired, did not substantially comply with the LGTCA, neither can Halloran's letter of July 7, which was 82 days late.

■ Halloran also argues that "Montgomery County has waived its argument that the LGTCA has not been satisfied by its ability to thoroughly investigate the claim, and it should be estopped from arguing that [Halloran] did not comply with the LGTCA." In support of this argument Halloran relies on the following comment by the Court of Appeals in *Moore v. Norouzi,* 371 Md. 154, 180, 807 A.2d 632 (2002): "The same acts and conduct that establish[ ] that the purpose of the statute has been satisfied may also constitute a waiver of notice or create an estoppel." Halloran's argument, however, misconstrues the statute and *Moore.* In essence, Halloran is arguing that, because the County was able to conduct a thorough investigation and thus was not prejudiced by the late notice, Halloran's failure to comply with the notice provision of the LGTCA should be excused. We disagree.

That evidence may still be available, and an investigation still possible, after the expiration of the 180 day period does not eliminate the notice provision as a "condition precedent" to

a claim under the LGTCA. Waiver, under the theory in *Moore*, may occur only where an imperfect notice is given within the 180 day period that prompts a timely and full investigation of the tort claim. Waiver does not occur whenever a successful investigation occurs regardless of when notice was provided. Such a reading of the LGTCA would render the notice provision superfluous. *See Comptroller of the Treasury v. Sci. Applications Int'l Corp.*, 405 Md. 185, 198, 950 A.2d 766 (2008) ("[A] statute must be read so that no word, clause, sentence, or phrase is rendered superfluous or nugatory."). Therefore, it was *not* the County's burden to claim "that any alleged deficiency in notice had [an] impact . . . on [the County's] ability to conduct a thorough investigation." Such inquiry only arises, as discussed *infra*, when a claimant has shown good cause to waive the notice provision, and the burden, by statute, shifts to the local government to show that its defense has been prejudiced. *See* § 5–304(d).

## 2.

### Did the circuit court abuse its discretion in concluding that Halloran failed to demonstrate good cause to waive the notice provision of the LGTCA?

Having determined that Halloran neither strictly nor substantially complied with the notice provision of the LGTCA, we must next consider whether, pursuant to Section 5–304(d), the circuit court abused its discretion in concluding that Halloran did not have good cause to waive the notice requirement. *Wilbon*, 172 Md.App. at 205, 913 A.2d 678. Halloran argues that she had "good cause" for failing to provide proper notice under the LGTCA because she prosecuted her claim with sufficient diligence. Consequently, Halloran claims, the burden was on the County to affirmatively show that it had been prejudiced by the deficient notice, which it failed to do.

The County asserts that Halloran did not demonstrate good cause sufficient to waive the notice requirement, because, within 180 days of the incident, Halloran was aware of the County as a potential defendant and she had engaged an

attorney, but failed to supply the requisite notice. The County also contends that prejudice to its defense is inconsequential, because Halloran did not show good cause.

## Standard of Review

We have stated:

"The discretion with which all courts determine whether good cause has or has not been shown is broad. It involves the exercise of one of the most important judicial functions. A ruling made in the exercise of that discretion is entitled to the utmost respect. It should not be overturned by an appellate court unless there is a clear showing that the discretion has been abused—that the result falls outside its broad limits."

*Wilbon,* 172 Md.App. at 205, 913 A.2d 678 (quoting *Madore v. Baltimore County,* 34 Md.App. 340, 346, 367 A.2d 54 (1976)).

## Good Cause

In *Wilbon,* we summarized the topic of good cause under the LGTCA:

Good cause exists when a claimant prosecutes a claim "with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances." *Heron v. Strader,* 361 Md. 258, 271, 761 A.2d 56 (2000) (citation omitted). We noted in *White,* 163 Md.App. 129, 877 A.2d 1129, that courts have considered **the following factors that generally have been found to constitute good cause: " '[1] excusable neglect or mistake (generally determined in reference to a reasonably prudent person standard), [2] serious physical or mental injury and/or location out-of-state, [3] the inability to retain counsel in cases involving complex litigation, ... [4] ignorance of the statutory notice requirement[,]' " or (5) misleading representations made by representative[s] of the local government.** 163 Md.App. at 152, 877 A.2d 1129 (citations omitted).

*Wilbon,* 172 Md.App. at 205–206, 913 A.2d 678 (2006) (emphasis added) (footnote omitted).

We examined each of these factors in *Wilbon* to determine whether the trial court in that case had acted within its discretion in determining that there *was good cause* to waive the notice requirement on behalf of the claimant. 172 Md. App. at 206–07, 913 A.2d 678. We began with a thorough review of the record and found that

> [t]here [was] no evidence in the record (1) that [the claimant] suffered from a physical or mental condition that impaired her ability to give timely notice of the claim, (2) that [the claimant] did not know about the statutory notice requirement, or (3) that misleading representations were made by a representative of Baltimore City. In addition, the record show[ed] that [the claimant] consulted with an attorney less than a month after Wilbon's death.

*Id.* at 206, 913 A.2d 678. With no evidence of these factors, we concluded that "the only recognized factor remaining to support the trial court's finding of good cause [was] 'excusable neglect or mistake (generally determined in reference to a reasonably prudent person standard).' " *Id.* at 207, 913 A.2d 678 (quoting White, 163 Md.App. at 152, 877 A.2d 1129).

We summed up the pertinent facts on the remaining factor this way:

> The bottom line in the case *sub judice* is that, within four days after Wilbon's death, [the claimant] filed a complaint of alleged police misconduct with the CRB and, within a month after his death, [the claimant] sought the advice of a local attorney. No other action was taken by [the claimant], or anyone else on behalf of Wilbon's survivors or estate, until four to six weeks after the expiration of the 180 day statutory period, when [the claimant] submitted written notice of a tort claim to the police commissioner (instead of to the City Solicitor, as required by Section 5–304(c)(1)(i)). In other words, nothing was done to advance any tort claim arising out of Wilbon's death for over six months after [the claimant] consulted with an attorney.

*Id.* at 208–09, 877 A.2d 1129 (footnotes omitted).

The only excuse put forward by the claimant was the "presence of an ongoing police investigation into [the claim-

ant's] complaint of police wrongdoing." *Id.* at 210, 877 A.2d 1129. We held that such excuse could not constitute " 'excusable neglect' for failing to comply with the notice requirement of the LGTCA." *Id.* Nor could tardy notice provide grounds, in and of itself, for good cause. We stated:

> [The claimant] has not cited to any cases in support of the proposition that notice of a tort claim sent shortly after the expiration of the 180 day period constitutes good cause to justify a waiver of the notice requirement. Indeed, **the concept of diligence of an ordinarily prudent person must relate to actions taken during the 180–day period, not afterwards.** Notice of a tort claim sent shortly after the expiration of the 180–day period, without sufficient explanation as to why such notice could not have been given within 180 days, cannot support a finding of the requisite diligence of an ordinarily prudent person. Here, no explanation, much less a sufficient explanation, was given as to why [the claimant's] January 1, 2001 notice of claim could not have been given on or before December 2, 2000.

*Id.* at 210–11, 877 A.2d 1129 (emphasis added). Thus, while giving due regard to the trial court's broad discretion, "we conclude[d] that ... the trial court abused its discretion in finding good cause to waive the notice requirement." *Id.* at 211, 877 A.2d 1129.

In rendering its decision in favor of the County, the circuit court in the case *sub judice* stated:

> So, the fallback position is the determination, if it can be made, of a waiver of the notice requirement. Notwithstanding the other provisions, of this section under 5–304(d), unless the defendant can affirmatively show that its defense has been prejudiced by a lack of required notice upon motion, and for good cause shown, the [c]ourt may entertain the suit.

> The County raises the issue with a good argument that, you know, "There could have been a bagel shop on the corner, and maybe there are witnesses to this, but so much time has passed that we don't know. And Judge, there's no

good cause anyhow." Well, without blessing or not blessing the County's lack of, the County's argument that they have been prejudiced, and really without making a decision on that, I'm satisfied that there is not good cause under the definition of *Wilbon*.

The things that have been found to constitute good cause are excusable neglect or mistake. I don't think we have that here. This was a citizen, obviously, who was upset by this, and obviously so injured that she jumped on it right away. I mean, frankly, I wouldn't even known who to sit down and get ahold of, but she did, somehow, determine it was the Highway Department and the Department of Public Works. I guess she called up and said, "Who is responsible for the highways?"

Serious physical or mental injury; she didn't have that. Inability to retain counsel; there is no evidence of that. Ignorance of the statutory notice requirement. I'm sure that was that she did have that, but [Judge] Woodward pointed out, the Court of Appeals has not yet chimed in on that, but in *Williams v. Montgomery County*, the Court of Special Appeals rejected ignorance of the statutory notice requirement.

And finally, misleading representations made by representatives of the local government. I don't find, when I really think about it, that there was anything misleading made by the representation of the response by the Department of Public Works to Mrs. Halloran.

In her appeal, Halloran does not address any of the factors relied on by the circuit court. Instead, Halloran argues that she demonstrated good cause because she "prosecuted her claim with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances." This is so, contends Halloran, because she sent her October 22, 2004 letter "to the entity she believed was responsible both for her injury and for repairing the condition that caused her injury."

■ We construe this argument to be that Halloran demonstrated good cause based on the factor of "excusable neglect or mistake" under *Wilbon.* We see no merit in this argument. Within a few days of her injury Halloran identified the County agency responsible for roadway repairs (DPWT) and wrote to that entity demanding that they repair the roadway. Halloran made no tort claim in her October 22 letter to DPWT. When DPWT responded that it had repaired the roadway, and made no mention of a potential claim, Halloran made no further efforts to indicate that she had a claim against the County. Instead, Halloran sent notice of her tort claim to the State and had her counsel send a similar notice to Washington Gas, both within the 180 day notice period. A similar notice, however, was not sent to the County until almost three months after the expiration of the notice period. Halloran failed to articulate before the circuit court or this Court any basis for failing to send proper notice to the County within the requisite time period. The circuit court clearly demonstrated that it understood the law and properly applied the law to the facts of this case. Therefore, we conclude that the circuit court did not abuse its discretion.

### 3.

### Did the trial court commit reversible error in admitting testimony regarding repairs to the road condition that caused her injuries?

Halloran contends that the trial court erred in admitting her testimony, which was elicited on cross-examination, about the repairs made by the County to the road as articulated in DPWT's November 10, 2004 letter. Specifically, Halloran contends that her testimony violated Maryland Rule 5–407(a), because the State used the testimony to demonstrate the County's culpability. Halloran also argues that her testimony about the contents of the November 10 letter should not have been permitted because Halloran lacked first-hand knowledge of the County's repairs and thus her testimony was inadmissible hearsay.

The State argues that the circuit court did not commit reversible error in allowing Halloran to testify regarding the November 10, 2004 letter. Specifically, the State maintains that Halloran waived her objection to testifying about the letter by subsequently entering the letter into evidence. The State contends that, if the issue was not waived, the circuit court properly allowed the testimony, under Maryland Rule 5–407(b)(2), for the purpose of establishing that "someone *other than the State* owned and/or controlled the crosswalk." Finally, the State argues that, even if the circuit court erred in allowing the testimony, Halloran has failed to carry her burden of demonstrating that the error was "substantially injurious" to merit reversal on appeal.

## Standard of Review

Our review of the evidentiary allegations of error is guided generally by three principles.

First, Maryland Rule 5–103(a) provides that "error may not be predicated upon a ruling that admits or excludes evidence unless the party is prejudiced by the ruling." Second, " 'The admission or exclusion of evidence is a function of the trial court which, on appeal, is traditionally viewed with great latitude.' " *Commercial Union Insurance Co. v. Porter Hayden Co.*, 116 Md.App. 605, 641, 698 A.2d 1167 (1997) (quoting *Swann v. Prudential Ins. Co.*, 95 Md.App. 365, 374, 620 A.2d 989 (1993)). And third, " 'An appellate court will only reverse upon finding that the trial judge's determination was both manifestly wrong and substantially injurious.' " *Id.* (quoting *Swann*, 95 Md.App. at 375, 620 A.2d 989).

*Angelakis v. Teimourian*, 150 Md.App. 507, 525, 822 A.2d 494 (2003).

With regard to whether evidence is hearsay, however, our review is under a different standard.

[An appellate court] review[s] rulings on the admissibility of evidence ordinarily on an abuse of discretion standard. *See Hopkins v. State*, 352 Md. 146, 158, 721 A.2d 231 (1998).

Review of the admissibility of evidence which is hearsay is different. Hearsay, under our rules, *must* be excluded as evidence at trial, unless it falls within an exception to the hearsay rule excluding such evidence or is "permitted by applicable constitutional provisions or statutes." Md. Rule 5-802. Thus, a circuit court has no discretion to admit hearsay in the absence of a provision providing for its admissibility. Whether evidence is hearsay is an issue of law reviewed *de novo*.

*Bernadyn v. State*, 390 Md. 1, 7–8, 887 A.2d 602 (2005).

Halloran alleges that the trial court erred in permitting the following exchange between defense counsel and Halloran, who was on the stand undergoing cross-examination:

[DEFENSE COUNSEL]: And just so I clear up one thing, the first people you notified about this incident was Montgomery County, correct?

[HALLORAN]: Yes.

[DEFENSE COUNSEL]: And it's your understanding that the County corrected, the County made the repairs to this area—

[HALLORAN'S COUNSEL]: Objection.

[DEFENSE COUNSEL]:—correct?

THE COURT: Overruled.

[DEFENSE COUNSEL]: The County did make repairs to this area, did they not?

[HALLORAN]: It's my understanding that repairs were made.

[DEFENSE COUNSEL]: Did you receive a letter from the county?

[HALLORAN]: Yes.

[DEFENSE COUNSEL]: Did you receive a letter from the County, advising that they had performed these repairs?

[HALLORAN]: They said that it was a very dangerous situation and that they wanted to—

[DEFENSE COUNSEL]: And they—

[HALLORAN]:—rush out and fix it.

[DEFENSE COUNSEL]:—repaired the, the area, did they not?

[HALLORAN]: They did and referred me to contact the State.

Later, on re-direct examination, Halloran's counsel questioned Halloran on this subject:

[HALLORAN'S COUNSEL]: Ms. Halloran, when you made your complaint to the County, did you get a response?

[HALLORAN]: Yes, I did.

[HALLORAN'S COUNSEL]: Do you know who responded?

[HALLORAN]: The chief to whom I wrote the letter to.

\* \* \*

[HALLORAN'S COUNSEL]: Do you know, do you know where your complaint went from the department or the County's Department of Public Works and Transportation?

[HALLORAN]: I know that they dispatched the repair to be made. They said it was very dangerous and they agreed with my assessment of the danger and that I would have to go, you know, talk to the state, that they went ahead and did it because of the immediate danger.

[HALLORAN'S COUNSEL]: Okay. Do you, and why, you said that they—I'm sorry. Now, you said that it went to the State. Do you know how it got to the State, your complaint?

[HALLORAN]: I don't know if it was referred to the State or how they were notified. I had called, I don't remember how I got the phone number, but I was told to call a certain number by the State. I think, I believe, the letter may say, "Call," you know, "Call this number and get with the State." I'd have to re-read the letter, please.

[HALLORAN'S COUNSEL]: Did, did the County make any representation to you as to their fault?

[DEFENSE COUNSEL]: Objection, Your Honor.

THE COURT: Overruled.

[HALLORAN]: No. The County said they went, they went out to look at the area, they saw that it was an immediate threat essentially, my words, danger, and that they would go ahead and fix it on behalf of the State, I believe it said.

[HALLORAN'S COUNSEL]: Okay. And did they tell you that the State was at fault?

[HALLORAN]: They said that they were not responsible and that the State was.

[HALLORAN'S COUNSEL]: Okay.

Halloran's counsel then moved for admission of DPWT's November 10, 2004 letter into evidence, and it was received over the State's objection. The letter read:

Dear Ms. Halloran:

Thank you for letting us know about the condition of the crosswalk at Old Georgetown and Edgemoor Roads. We very much regret your injury and hope your complete recovery is rapid.

Our Highway Maintenance staff informs me that your letter was faxed to the Maryland State Highway Administration's (MSHA) district maintenance office, because the crosswalk is within the State's right-of-way. However, a recent inspection indicated that repairs had not yet been accomplished. Because we agree that this is a dangerous situation, a Highway Maintenance crew has now repaired the deteriorated area to ensure pedestrian safety.

We appreciate the opportunity to address this matter and again, send you our best wishes.

Sincerely,

/s/

Al R. Roshdieh

Chief

## Subsequent Remedial Measures

As indicated above, at trial Halloran objected to the question: "And it's your understanding that the County corrected, the County made the repairs to this area ... correct?" On appeal, Halloran complains that this question violated Maryland Rule 5–407, which provides:

(a) **In general.** When, after an event, measures are taken which, if in effect at the time of the event, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event.

(b) **Admissibility for other purposes.** This Rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as (1) impeachment or (2) if controverted, ownership, control, or feasibility of precautionary measures.

As a preliminary matter, we note that one problem with Halloran's contention is the matter of preservation. "[A] party waives his objection to testimony by *subsequently offering testimony on the same matter.*" *Peisner v. State*, 236 Md. 137, 144, 202 A.2d 585 (1964) (emphasis added). On the other hand:

When testimony has been admitted and an exception noted, counsel may deem it necessary to cross-examine the witness on the subject, and **if it is simply a cross-examination he ought not to be deprived of his exception,** provided the record shows he does not intend thereby to waive it, and that ought to be inferred when it is strictly cross-examination.

*United Rys. & Elec. Co. v. Corbin,* 109 Md. 442, 455, 72 A. 606 (1909) (emphasis added).

Halloran objected to the question: "And it's your understanding that the County corrected, the County made the repairs to this area ... correct?" On re-direct examination, Halloran's attorney questioned Halloran regarding the circumstances surrounding the County's repairs to the road condition that caused her injuries, as well as the contents of

the November 10, 2004 letter from DPWT. Halloran's attorney, however, then offered the November 10 letter into evidence, and it was admitted over the State's objection. Consequently, Halloran's attorney did not merely question Halloran about the County's repairs, as the State had done on cross-examination. Halloran's attorney affirmatively offered evidence on the same matter. Therefore, we conclude that Halloran waived any objection to her testimony concerning the repairs made by the County to the road condition that precipitated her injuries.

 Even if we were to determine that the objection had not been waived, we would hold that the question, "it's your understanding that the County ... made the repairs to this area ... correct?" was permitted under Maryland Rule 5–407(b).

We have stated:

> When an objection is made that [a party] is attempting to introduce evidence of a "remedial measure" that should be excluded under Rule 5–407(a), the trial judge must make a factual determination as to whether the testimony sought to be elicited would be about a subsequent remedial measure within Rule 5–407(a) and, if so, whether it would be admissible under Rule 5–407(b). Such factual findings by the trial judge are entitled to great deference and will not be disturbed unless clearly erroneous, *i.e.,* unsupported by any substantial evidence.

*Baltimore Gas & Elec. Co. v. Flippo,* 112 Md.App. 75, 102, 684 A.2d 456 (1996), *aff'd,* 348 Md. 680, 705 A.2d 1144 (1998).

Implicit in the circuit court's decision to overrule Halloran's objection was a factual determination that the testimony was offered for the purpose of showing the State's lack of control over the accident site, and this was permitted under Rule 5–407(b). Based on our review of the record, we conclude that there was evidence that the State's defense was premised on demonstrating that it did not have control over the site of the accident and that the objected to question went to that issue.

The circuit court thus did not err in determining that the testimony was admissible under Rule 5–407(b).

## Hearsay

 Halloran contends that the testimony the State elicited from her regarding the contents of the November 10 letter from the DPWT was hearsay. We do not reach the merits of this contention, because it has not been preserved for appellate review.

 Maryland Rule 8–131(a) provides that "[o]rdinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court[.]" The purpose of the Rule "is to allow the court to correct trial errors, obviating the necessity to retry cases had a potential error been brought to the attention of the trial judge." *Sydnor v. State,* 133 Md.App. 173, 183, 754 A.2d 1064 (2000), *aff'd,* 365 Md. 205, 776 A.2d 669 (2001), *cert. denied,* 534 U.S. 1090, 122 S.Ct. 834, 151 L.Ed.2d 714 (2002). The rule arises from the principle that "[w]hen a party has the option either to object or not to object, his failure to exercise the option while it is still within the power of the trial court to correct the error is regarded as a waiver of it estopping him from obtaining a review of the point or question on appeal." *Basoff v. State,* 208 Md. 643, 650, 119 A.2d 917 (1956).

 In accordance with these principles, Maryland Rule 2–517 provides, in relevant part:

(a) **Objections to evidence.** An objection to the admission of evidence shall be made at the time the evidence is offered or as soon thereafter as the grounds for objection become apparent. Otherwise, the objection is waived....

(b) **Continuing objections to evidence.** At the request of a party or on its own initiative, the court may grant a continuing objection to a line of questions by an opposing party. For purposes of review by the trial court or on appeal, the continuing objection is effective only as to questions clearly within its scope.

In other words, "unless a [party] makes timely objections in the lower court or makes his feelings known to that court, he will be considered to have waived them and he can not now raise such objections on appeal." *Caviness v. State*, 244 Md. 575, 578, 224 A.2d 417 (1966).

Although Halloran, in both her brief and reply brief, directs our attention to all of the testimony recounted above, the objection made by Halloran's counsel was to only one of the State's questions: "And it's your understanding that the County correct, the County . . . made the repairs to this area . . . correct?" No objection was made to any subsequent questions posed by the State, nor did Halloran's counsel request a continuing objection. The question objected to did not call upon Halloran to testify as to the contents of the November 10, 2004 letter, particularly when just such a question was asked moments later without any objection. Indeed, Halloran's counsel never objected to any of the State's questions regarding the contents of the November 10 letter.[6] Therefore, we do not reach Halloran's assertion that her "testimony about the letter is hearsay."

Accordingly, the trial court did not commit reversible error in overruling Halloran's objection and in allowing Halloran to testify as to the repairs to the site of the accident and the contents of DPWT's letter regarding those repairs.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**

---

6. Halloran cannot rely on the State's objection during re-direct examination that the contents of the letter were hearsay. *Cf. Osburn v. State,* 301 Md. 250, 253, 482 A.2d 905 (1984) (finding the appellant had not preserved the issue where the co-defendant objected at trial but the appellant did not).