26 A.3d 352

## CONSOLIDATED WASTE INDUSTRIES, INC.

v.

## STANDARD EQUIPMENT CO.

No. 143, Sept. Term, 2010.

Court of Appeals of Maryland.

Aug. 15, 2011.

Spencer M. Hecht (Hecht & Associates LLC, Silver Spring, MD), on brief, for appellant.

Katherine B. Hill (Robert S. Brennen and Christopher T. Zirpoli of Miles & Stockbridge P.C., Baltimore, MD), on brief, for appellee.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

HARRELL, J.

Owner unhappiness with a series of repairs to a John Deere 744J Loader (Waste Hauler)[1] inspired this litigation. Appellant, Consolidated Waste Industries, Inc. ("Consolidated Waste") purchased the new Waste Hauler from Appellee, Standard Equipment Company ("Standard Equipment"), in June 2005. Twenty months later, the machine experienced hydraulic and operational issues. Standard Equipment was able to "repair" it, after two tries. Almost seven months later, after the return of the equipment to Consolidated Waste, the Waste Hauler evinced the same or quite similar mechanical issues. Standard Equipment "repaired" it, but two attempts were necessary again. Consolidated Waste filed an action in circuit court, seeking to recoup the cost of this second round of repairs.

Although somewhat convoluted factually, at bottom, this case is about whether the circuit court abused its discretion at trial in two specific instances. Consolidated Waste argues that the trial court erred by (1) excluding evidence of a third

[1]. A John Deere 744J Loader is a piece of heavy machinery designed specially for the solid waste disposal industry. It is equipped with anti-puncture tires and a large moving bucket loader for lifting purposes. Its specific purpose here was to move refuse from one point to another in a transfer station, i.e., a location where collecting trucks deposit refuse and from which the refuse is re-directed for disposal purposes.

round of later repairs, made by a company other than Standard Equipment, and (2) using a confusing verdict sheet supplied by Standard Equipment. For reasons to be explained more fully *infra*, we hold that the trial court did not abuse its discretion in either instance. Even had we been convinced that the trial court acted unreasonably, we are unable to declare that the decisions prejudiced actually (i.e., impacted harmfully) the verdict reached by the jury. *See Crane v. Dunn*, 382 Md. 83, 91, 854 A.2d 1180, 1185 (2004). Accordingly, we affirm the judgment of the circuit court.

## I. Facts and Legal Proceedings.

Three separate sets of repairs were made to the Waste Hauler purchased by Consolidated Waste from Standard Equipment. Consolidated Waste claims that the first and second set of repairs, performed by Standard Equipment, were made in such a way as to constitute a breach of contract and negligence.[2] Likewise, Consolidated Waste contends that the third round of repairs, performed by a different company (Carter Machinery) over a year after the filing of its complaint, were completed correctly, i.e., the Waste Hauler ceased thereafter to experience the same or similar deficiencies as it had, and illustrate the proper duty of care owed (but not honored) by Standard Equipment.

Consolidated Waste purchased the new Waste Hauler from Standard Equipment on 7 June 2005 for $424,647.00.[3] The Waste Hauler was an integral part of Consolidated Waste's daily operations as a full service refuse removal company. It

---

**2.** We focus in this opinion on the negligence claim, as Consolidated Waste's argument to us seems predicated on the linchpin that the negligent workmanship was the procuring cause of the contractual breach.

**3.** It is unclear what, if any, agreement was made at the time of purchase as to which party was responsible to service the Waste Hauler, i.e., who was to perform preventative maintenance and major repairs. The parties provided contradictory information. Although important for the jury's determination as to breach of contract and negligence, it is of little consequence to the abuse of discretion issues before us.

was used at a transfer facility approximately thirteen hours a day, five-and-a-half days a week. On 16 February 2007, approximately twenty months and 5635 hours of operating time after the original purchase, the Waste Hauler experienced steering problems, slow operation, and difficulties with the "bucket" moving up and down. Consolidated Waste's president, William Lash, determined that the hydraulic system failed and contacted Standard Equipment about performing repairs.

On or about 16 February 2007, the Waste Hauler was sent to Standard Equipment. Approximately one month later, Standard Equipment informed Consolidated Waste that the repairs were complete. On 9 March 2007, Consolidated Waste paid the invoice for the repairs, in the amount of $17,630.23, but the machine turned out, when tested, to be inoperable completely and required further repair.[4] At this point, Standard Equipment informed Consolidated Waste that the hydraulic system was contaminated with metal debris in the hydraulic fluid.

On 25 May 2007, four months after receiving initially the Waste Hauler, Standard Equipment completed the first set of repairs and returned the Waste Hauler to its owner in an operational condition. Consolidated Waste paid the invoice for the second round of initial repairs, which included only additional parts, in the amount of $2,803.91. The total cost to Consolidated Waste for the first set of repairs was $20,434.14.[5]

On or about 6 December 2007, approximately seven months and 2153 additional hours of operating time, Consolidated Waste contacted Standard Equipment again about similar, if not identical, operational problems with the Waste Hauler, i.e., steering problems, slow operation, and difficulties with the "bucket" moving up and down. The Waste Hauler was trans-

---

4. Standard Equipment retained the Waste Hauler over the entire course of the first set of repairs.

5. Standard Equipment did not perform any follow-up maintenance on the Waste Hauler after its return to Consolidated Waste in May 2007.

ported to Standard Equipment for a second set of repairs and, on or about 16 January 2008, it was returned "repaired" to Consolidated Waste after it paid the invoice for $16,769.81. After less than thirty minutes of operation at the transfer station, the same problems occurred for which the Waste Hauler had been sent for repair.

The Waste Hauler was returned yet again to Standard Equipment for correction, where it remained for approximately four months, from 25 January 2008 through 9 April 2008. Upon completion of this set of repairs, Standard Equipment returned the Waste Hauler to Consolidated Waste, which paid, under protest, the invoice of $16,853.92. Unlike the invoices for the repairs earlier in 2007, the invoice for the latter 2007 and 2008 repairs included itemization for labor and parts. The total cost to Consolidated Waste for the complete second set of repairs was $33,623.73.

On 8 December 2008, Consolidated Waste filed initially in the Circuit Court for Prince George's County a three count complaint alleging breach of contract, negligence, and unjust enrichment [6]—based on Standard Equipment's alleged failure to perform the second set of repairs in a workmanlike and timely manner. The complaint asked for judgment in the amount of the invoices for the second set of repairs only, $33,623.73. On or about 29 June 2009, the case was transferred to the Circuit Court for Charles County following filing of an unopposed motion by Standard Equipment.

Over a year after the complaint was filed, and approximately twenty months and 4404 hours of additional operating time of the Waste Hauler after the disputed repairs, on 31 December 2009, the Waste Hauler experienced hydraulic system problems again. Consolidated Waste took the equipment to Carter Machinery, which discovered metal debris in the hydraulic tank.[7] It performed a complete hydraulic system

---

6. Consolidated Waste dismissed later voluntarily the count alleging unjust enrichment.

7. Carter Machinery's product support representative, G.B. Critzer, testified at trial as a witness called by Consolidated Waste that the presence

clean-out in slightly less than two months (from 31 December 2009 to 23 February 2010), at a cost to Consolidated Waste in excess of $40,000.

On 5 May 2010, the day prior to trial, Standard Equipment filed a "Motion in Limine to Exclude Expert Testimony of G.B. Critzer ('Critzer')"; a "Motion in Limine to Exclude Evidence of Repairs not in Controversy" [8]; and a "Motion in Limine to Exclude Evidence of Subsequent Repairs." [9] The next day, prior to trial commencing, the trial judge denied the motions to exclude completely the testimony of Critzer and to exclude evidence of the "repairs not in controversy." The trial court granted the motion to exclude evidence of Carter's subsequent repairs.

Trial consumed two days, the 6th and 7th of May 2010. Critzer testified as an expert witness for Consolidated Waste, opining about the proper industry standard to correct metal contamination in a hydraulic system and the role he played generally in supervising such repairs in the past. Even after examining the invoices of Standard Equipment's repairs, however, Critzer refused to comment specifically on the details or competency of the work performed by Standard Equipment.

In submitting the case to the jury, the trial judge elected to use a verdict sheet proposed by Standard Equipment. Consolidated Wasted objected, contending that (1) Question 5 on the sheet was redundant and might be confusing to the jury in light of Question 4, and (2) Question 6 should not be present because it made inappropriate reference to the defense of contributory negligence. Questions 4, 5, and 6 asked:

---

of metal debris in the hydraulic tank indicated that the entire hydraulic system was contaminated.

8. The "Repairs not in Controversy" refers to the first set of repairs to the Waste Hauler performed by Standard Equipment between 16 February 2007 and 9 May 2007.

9. The "Subsequent Repairs" refers to the third set of repairs to the Waste Hauler performed by Carter Machinery from 31 December 2009 until 23 February 2010, twenty months after Standard Equipment last returned the Waste Hauler to Consolidated Waste.

(4) Has Plaintiff Consolidated Waste Industries, Inc. proven by a preponderance of the evidence presented at trial that Defendant Standard Equipment Company was negligent?

Yes ____ No ____

(5) Has Plaintiff Consolidated Waste Industries, Inc. proven by a preponderance of the evidence presented at trial that Defendant Standard Equipment Company's negligence caused damages to Plaintiff?

Yes ____ No ____

If you answered either question four or question five "no" skip (and do not answer) questions six through seven and continue directly to question eight.

(6) Was Plaintiff Consolidated Waste Industries, Inc. contributorily negligent?

Yes ____ No ____

The jury answered Questions 4 and 5 in the negative and, accordingly, left Question 6 unanswered.

The jury returned a verdict in favor of Standard Equipment, and, on 27 May 2010, judgment was entered. On 10 June 2010, Consolidated Waste noted timely an appeal to the Court of Special Appeals. On 18 March 2011, on our initiative and before the intermediate appellate court could decide the appeal, a writ of certiorari was issued. *Consolidated Waste v. Standard Equipment,* 418 Md. 397, 15 A.3d 298 (2011).[10] We consider here whether the trial court abused its discretion by (1) granting the "Motion in Limine to Exclude Evidence of Subsequent Repairs" and (2) submitting to the jury the verdict sheet offered by Standard Equipment.[11]

---

**10.** After reading this opinion, one well may wonder why we issued, on our initiative, a writ of certiorari. *See* Md.Code (1976, 2006 Repl.Vol., 2010 Supp.), Cts. & Jud. Proc. Art., § 12–203 ("If the Court ... finds that review of the case ... is desirable and in the public interest....."). The questions presented, the analysis, and the outcome are wholly unremarkable and of interest solely to the litigants.

**11.** The specific questions presented in Consolidated Waste's brief are as follows:

## II. Standard of Review.

The nature of the type of evidentiary ruling represented by the grant of the Motion in Limine to Exclude Evidence of Subsequent Repairs is "left to the sound discretion of the trial judge. . . ." *Malik v. State,* 152 Md.App. 305, 324, 831 A.2d 1101, 1112 (2003) (citing *Martin v. State,* 364 Md. 692, 705, 775 A.2d 385, 393 (2001)). When weighing the probative value of proffered evidence against its potentially prejudicial nature, an abuse of discretion in the ruling may be found "where no reasonable person would share the view taken by the trial judge." *Brown v. Daniel Realty Co.,* 409 Md. 565, 601, 976 A.2d 300, 321 (2009) (citing *In re Adoption/Guardianship No. 3598,* 347 Md. 295, 312, 701 A.2d 110, 118 (1997)). That is to say, an abuse of discretion occurs when a decision is "well removed from any center mark imagined by the reviewing court and beyond the fringe of what that court deems minimally acceptable." *King v. State,* 407 Md. 682, 711, 967 A.2d 790, 807 (2009) (internal quotation marks and citation omitted). Thus, "a ruling reviewed under an abuse of discretion standard will not be reversed simply because the appellate court would not have made the same ruling." *Id.* (internal quotation marks and citation omitted). "Whether there has been an abuse of discretion depends on the particular circumstances of each individual case." *Pantazes v. State,* 376 Md. 661, 681, 831 A.2d 432, 444 (2003).

Even when a trial court is found to have abused its discretion, "it has long been the settled policy of this [C]ourt not to reverse for harmless error." *Brown,* 409 Md. at 613, 976 A.2d at 328 (internal quotation marks and citation omitted); *See Crane,* 382 Md. at 91, 854 A.2d at 1185 (stating that the burden is on an appellant to show that the trial court error is accompanied by prejudice). Prejudice exists when the

1. Whether the trial court abused its discretion in granting ... Appellee's motion *in limine* to exclude evidence of subsequent repairs?

2. Whether the trial court abused its discretion in granting Appellee's requested verdict sheet ( [as to] Question 5 and 6)?

particular error is determined likely to have affected the verdict—"it is not the possibility but the probability of prejudice which is the object of the appellate inquiry." *Crane*, 382 Md. at 91, 854 A.2d at 1185 (internal quotation marks and citation omitted).

Similarly, the decision to use a particular verdict sheet "will not be reversed absent abuse of discretion." *Applied Indus. Techs. v. Ludemann*, 148 Md.App. 272, 287, 811 A.2d 845, 854 (2002).[12] Moreover, Maryland appellate courts generally will not reverse even an unreasonable decision without evidence of prejudice/harm. *See Owens–Corning Fiberglas Corp. v. Garrett*, 343 Md. 500, 526, 682 A.2d 1143, 1155 (1996).

## III. Analysis.

### A. *The Grant of Standard Equipment's Motion in Limine.*

Maryland Rule 5–403 proclaims that, "[a]lthough relevant, evidence may be excluded if its probative value is outweighed substantially by the danger of unfair prejudice, confusion of the issues, or misleading the jury...." Evidence is probative "if it tends to prove the proposition for which it is offered," *Johnson v. State*, 332 Md. 456, 474, 632 A.2d 152, 160 (1993), while "[e]vidence is prejudicial when it tends to have some adverse effect ... beyond tending to prove the fact or issue that justified its admission...." *Hannah v. State*, 420 Md. 339, 347, 23 A.3d 192, 196 (2011) (internal quotation marks and citation omitted). The danger associated with the misuse of evidence tends to outweigh substantially any probative value where other evidence, tending to prove the same, may be attained through less prejudicial means. *See Norfolk S. Ry. Corp. v. Henry Tiller*, 179 Md.App. 318, 334, 944 A.2d 1272, 1282 (2008) (quoting *Eichel v. New York Cent. R. Co.*,

---

12. The choice of verdict sheet is left to the discretion of the court and "[t]hus, [the reviewing court] would have to find something very wrong with it to reverse the judgment." *Garlock, Inc. v. Gallagher*, 149 Md.App. 189, 201–02, 814 A.2d 1007, 1014 (2003).

375 U.S. 253, 255, 84 S.Ct. 316, 317, 11 L.Ed.2d 307, 309 (1963)).

█ Consolidated Waste urges two reasons why evidence of the subsequent repairs by Carter Machinery should have been allowed. First, the subsequent repairs were probative in that they tended to prove the proper industry standard or duty for performing a complete hydraulic system clean-out of a John Deere 744J Loader. *See Johnson*, 332 Md. at 474, 632 A.2d at 160. As this argument continues, the proffered evidence would have strengthened the credibility of Consolidated Waste's expert witness, Critzer; it tended to show that Critzer—as an employee of the company who performed the subsequent repairs—understood and oversaw the completion of similar repairs. Second, the fact that subsequent repairs were necessary indicated in and of itself that Standard Equipment's assertedly deficient workmanship constituted negligence and a breach of contract.

Despite this probity, the trial court determined ultimately that the probative value of the subsequent repairs, in fact, was limited. There was other testimony and evidence providing the same information, while presenting a lesser " 'likelihood of prejudice.' " *See Norfolk S. Ry. Corp.*, 179 Md.App. at 334, 944 A.2d at 1282 (quoting *Eichel*, 375 U.S. at 255, 84 S.Ct. at 317, 11 L.Ed.2d at 307). Critzer was permitted to testify, as an expert, about the duty owed when correcting the hydraulic system of a Waste Hauler contaminated with metal debris. Critzer also testified about his understanding and role in overseeing such a procedure on the same model of equipment.

Having concluded that evidence of the probative value of the subsequent repairs was limited, the trial court was persuaded by Standard Equipment's argument as to the potential prejudice that would be worked by admission of the evidence to tip ultimately the scales in Standard Equipment's favor. A reasonable person could conclude, as the trial judge did, that evidence of the subsequent repairs could confuse or mislead the jury into concluding erroneously that Standard Equipment breached the contract or acted negligently simply because

subsequent and similar repairs were made by Carter Machinery. Such evidence, in other words, could endanger the fair consideration of whether Standard Equipment was liable. Indeed, Critzer declined to testify that the problems with the Waste Hauler addressed by Carter Machinery were identical to previous problems experienced by the machine or the result of Standard Equipment's work on it. This is not surprising entirely, considering that the problems experienced by the Waste Hauler and Carter Machinery's repairs took place twenty months and over 4400 additional hours of operating time after the Waste Hauler underwent Standard Equipment's repairs that are at the core of the litigation. This attenuation of the potential probity of the proffered evidence was fair to consider in the balancing.

We conclude that the "particular circumstances" of the record in this case do not show there was an abuse of discretion. *Pantazes*, 376 Md. at 681, 831 A.2d at 444. The determination as to the subsequent repairs does not trespass "the fringe of what th[is] [C]ourt deems minimally acceptable." *King*, 407 Md. at 711, 967 A.2d at 807 (internal quotation marks and citation omitted). A reasonable trial judge could have determined that—given the potential for confusion and the predicted submission of other evidence that tended to prove the same point—the danger of prejudice outweighed substantially any probative value. Even assuming arguendo that the trial court abused its discretion in this regard, we still would decline to reverse on this record. The admitted evidence and testimony discussed *supra* supports the inference that the trial court's decision did not affect harmfully the jury's verdict. *See Crane*, 382 Md. at 91, 854 A.2d at 1185.

### B. *The Choice to Use Standard Equipment's Proposed Verdict Sheet.*

Rule 2–522(c) provides that "[t]he court may require a jury to return a verdict in the form of written findings upon specific issues. For that purpose, the court may use any method of submitting the issues and requiring written findings as it deems appropriate." The Rule imbues a trial court with,

in the words of *Owens–Corning,* 343 Md. at 525, 682 A.2d at 1155, "the authority to design submissions to the jury as well as format the jury's findings." "[I]n cases with multiple parties or issues," these special verdicts are "often useful...." *Id.* (citations omitted).

 Consolidated Waste, in its specific arguments offered here, fails to demonstrate how the trial court abused its discretion in utilizing Standard Equipment's proposed verdict sheet. Question 5 of the verdict sheet was neither redundant nor confusing to the jury, in light of Question 4. Question 4 of the verdict sheet asked whether Consolidated Waste proved that Standard Equipment was negligent, while Question 5 asked whether Consolidated Waste proved that any negligence found by the jury in its response to Question 4 caused damages. Consolidated Waste argues that Question 4 included all the elements of negligence, which the jury was instructed on properly, including causation and damages. By asking, in Question 5, if damages were caused by the negligence, the verdict sheet implied that Standard Equipment could have been negligent, but yet not caused any damages. Consolidated Waste claims that this separation of the elements of negligence was "confusing, redundant, and unnecessary."

The word "negligence" is used frequently in popular parlance to describe generally the breach of a duty, separate from the other legal elements that make the breach actionable— causation and damages—even on verdict sheets. As we explained in *Collins v. National Railroad Passenger Corp.,* 417 Md. 217, 251–52, 9 A.3d 56, 76–77 (2010), *cert. dismissed,*

A prima facie case of negligence under [the Federal Employers' Liability Act ("FELA")] is based on the common law elements in accordance with federal law: duty, breach, foreseeability, and causation. *Szekeres v. CSX Transp., Inc.,* 617 F.3d 424 (6th Cir.2010) (citing *Adams v. CSX Transp., Inc.,* 899 F.2d 536, 539 (6th Cir.1990) (holding that a FELA plaintiff asserting a cause of negligence against his or her employer must "prove the traditional common law elements of negligence: duty, breach, foreseeability, and

causation")). Ordinarily the general concept of negligence and the instruction on causation, distinct elements in a negligence claim, are explained and represented in separate questions on the verdict sheet. Vol.—Ch. 9, *Modern Federal Jury Instructions—Civil,* ¶ 6.2–6.4 (Matthew Bender 2010) (illustrating a model verdict sheet in which the elements of negligence and causation are addressed separately and in that order); *see also* 9–49 BENDER'S FEDERAL PRACTICE FORMS Form No. 49:34 (2010) (providing a sample verdict sheet in which the question of negligence preceded the question of causation); *see* MARYLAND CIVIL PATTERN JURY INSTRUCTIONS §§ 19–1, 19–10 (Maryland Bar Association, 4th ed. 2009 Supp.) (defining the general concept of negligence and causation elements respectively).

The trial court's decision seemed to be animated also by a practical concern—ensuring that the jury addressed all of the elements of Consolidated Waste's negligence claim. In sum, we conclude that a reasonable trial judge could "deem[ ] appropriate" the use of this special verdict. Rule 2–522(c).

Standard Equipment points out that the jury's negative answer to both Questions 4 and 5 supports the conclusion that the jury was not confused by the alleged separate treatment in these two questions of the elements of actionable negligence. The jury answering "no" to Question 4 demonstrated that it found at least one element (perhaps more) of negligence was not satisfied, in its judgment. The negative response to Question 5 makes crystal clear that specifically the jury concluded that at least the damages element of negligence was not fulfilled by Consolidated Waste's evidence. We are not persuaded that the jury's understanding of Question 5 had any prejudicial or harmful effect on the jury's response to Question 4.

■ Consolidated Waste quarrels also with Question 6, the part of the verdict sheet that asked the jury to consider potentially the defense of contributory negligence. Consolidated Waste argues that the previously-issued jury instructions were sufficient in and of themselves to present such a

defense. As the argument goes, including the question on the verdict sheet influenced improperly the jury to find in favor of Standard Equipment. In particular, as Consolidated Waste argues, the presence of Question 6 on the verdict sheet "forced the jury to consider the issue of contributory negligence, in the context of determining the elements of negligence."

Consolidated Waste relies upon *Fry v. Carter*, 375 Md. 341, 825 A.2d 1042 (2003), to bolster its argument that the trial judge instructed the jury improperly on the defense of contributory negligence. In *Fry*, a roadside worker was killed by a passing tractor-trailer. *See Fry*, 375 Md. at 344, 825 A.2d at 1043. The family of the worker filed a wrongful death and survival action against the driver and the driver's employer. *See id.* At the end of trial, the court instructed the jury on the theory of "unavoidable accident," which is viewed not so much a defense as a mere denial of negligence. *Fry*, 375 Md. at 357, 825 A.2d at 1050–51. We held the instruction inappropriate. In light of the evidence of the defendant's negligence, the unavoidable accident instruction "diverted juror attention from the pivotal issue in the case—negligence." *Fry*, 375 Md. at 356, 825 A.2d at 1050.

Unlike *Fry*, the present case involves an actual legal defense, contributory negligence. Standard Equipment was "entitled to have the jury instructed on any theory of the defense that is fairly supported by the evidence." *General v. State*, 367 Md. 475, 485, 789 A.2d 102, 108 (2002); *see also Sims v. State*, 319 Md. 540, 573 A.2d 1317 (1990). Here, there was at least some dispute over the impact on the machine's operational problems and the root cause of those problems, i.e., the daily maintenance (or not) on the Waste Hauler performed by Consolidated Waste. In any event, Consolidated Waste concedes that the oral instruction on contributory negligence was appropriate. *See* Reply Brief of Appellant at 17 ("There is no question that ... [Standard Equipment] was entitled to such an instruction [on contributory negligence]." (Emphasis omitted)). Moreover, the instruction did not divert juror attention from the pivotal issue, which was whether Standard Equipment was negligent, for Question 6 was only to be answered if

the jury answered Questions 4 and 5 in the affirmative. Indeed, Question 6 served actually a practical purpose—allowing the jury to separate the triable issues of negligence and contributory negligence. Such a practice is "useful in cases with multiple parties or issues." *Owens–Corning,* 343 Md. at 525, 682 A.2d at 1155. We are unwilling to conclude that the trial court abused its discretion by accepting a question about contributory negligence on the verdict sheet.

Even were we to determine that the trial court abused its discretion in this regard, Consolidated Waste failed to show how it was prejudiced by Question 6. The verdict sheet instructs clearly the jury to skip Question 6 if the answer to either Question 4 or Question 5 was "No." The jury answered both of the earlier questions in the negative and left Question 6 unanswered. It is not unreasonable to expect a jury to follow instructions presented clearly to them. Thus, there is no evidence that Question 6 tainted or affected in any way the verdict of the jury.

**JUDGMENT OF THE CIRCUIT COURT FOR CHARLES COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANTS.**