REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 43

September Term, 2015

_____

WILLIAM HARRIS, a minor by his mother,
NATONIA RATCHFORD

v.

HOUSING AUTHORITY OF BALTIMORE
CITY

_____

Berger,
Nazarian,
Leahy,

JJ.

_____

Opinion by Leahy, J.

_____

Filed:  April 27, 2016

In 2012, Natonia Ratchford[1] sued the Housing Authority of Baltimore City ("Appellee" or "HABC") on behalf of William Harris, her minor son, for injuries due to lead-based paint exposure that occurred years earlier, between 2003 and 2007. HABC was the owner of a row house where William lived or visited during this period.[2]

The September 2012 complaint, filed in the Circuit Court for Baltimore City, contained allegations of negligence and violations of the Maryland Consumer Protection Act against HABC. Following discovery and a stay of proceedings,[3] HABC filed a motion for summary judgment based on Appellants' failure to comply with the Local Government Tort Claims Act's ("LGTCA") notice requirement, as well as Appellants' failure to demonstrate good cause for a waiver of the notice requirement. Appellants responded, *inter alia*, with an affidavit from Ms. Ratchford stating that in 2004 she had given HABC oral notice of her intention to sue HABC for William's injury due to lead exposure. The court granted HABC's motion. From this judgment, Appellants filed a timely appeal posing the following questions, which we have rephrased and reordered:

1. Is there an absolute requirement that substantial compliance under the LGTCA include written notice, so that oral notice of a claim made by the mother of a lead poisoned minor to the designated representative of HABC necessarily fails as substantial compliance?

---

[1] We will refer to William Harris and Natonia Ratchford collectively as "Appellants," and we will only refer to them individually when relating facts that pertain only to William or to Ms. Ratchford.

[2] As discussed *infra*, William Harris and Ms. Ratchford's precise association with the property is not fully explained in the record.

[3] The case was stayed from June 12, 2013 to May 27, 2014.

2. Did the Circuit Court err by determining whether Appellants demonstrated good cause for waiver of the notice requirements under the LGTCA rather than submitting the issue to a jury?

3. Did the trial court err as a matter of law by misinterpreting and misapplying the test for good cause under the LGTCA?

4. Did the trial court err as a matter of law by not excluding hearsay testimony which the HABC submitted in support of its Motion for Summary Judgment?

We affirm the judgment of the circuit court. Without deciding whether oral notice could ever substantially comply with the LGTCA notice requirement, we hold that Ms. Ratchford's 2004 oral notice failed to fulfill the purpose of the requirement—which is to apprise the local government unit of its potential liability in time for it to conduct its own investigation "while the evidence was still fresh and the recollection of the witnesses was undiminished by time, sufficient to ascertain the character and extent of the injury and [the local government's] responsibility in connection with it." *Ellis v. Housing Authority of Baltimore City*, 436 Md. 331, 343 (2013) (citation and internal quotation marks omitted). We further hold that the circuit court did not abuse its discretion by failing to find good cause for a waiver of the notice requirement, nor did the circuit court usurp the role of the jury in making this determination itself. Finally, even if the hearsay issue were relevant to the circuit court's grant of summary judgment, which it was not, the circuit court did not improperly consider hearsay in its grant of summary judgment.

## BACKGROUND

William Harris was born on January 11, 2003. The complaint in the underlying action alleges that, from 2003 to 2010, he lived at or frequented the row house located at

2238 Guilford Avenue ("the Property"), and that his mother, Natonia Ratchford, was a tenant, resident, or invitee of the Property.[4] The HABC's precise role—whether it be as property owner, landlord, landlord's agent, or property manager—in regard to the Property is not pleaded in the underlying complaint, but an affidavit submitted by HABC avers that HABC "owned the property when [Appellants] claim[] to have lived and/or visited there."

Although the Property was built before 1978,[5] the record does not contain evidence of lead-based paint hazards within the Property. An April 7, 1994 report prepared for the Property by Micron, Inc., an environmental assessor, revealed no lead-based paint hazards.

----

[4] The complaint alleges that Ms. Ratchford was a tenant or "otherwise a lawful resident or invitee" and that William Harris "lived in the dwelling or frequented the dwelling as an invitee of the tenant during 2003-2010." We observe that a person named Felicia Dorsey signed, as "Lessee," the "Rehabilitation Housing Program Disclosure of Information on Lead-Based and/or Lead-Based Paint Hazards" form and "Tenant Notification Acknowledgement Form" for the Property on June 29, 2005, December 29, 2006, December 27, 2007, January 14, 2008, January 21, 2009, and January 11, 2010. Ms. Ratchford's signature, as a second "Lessee" in addition to Ms. Dorsey, appears only on two disclosure forms dated January 14, 2008 and January 21, 2009. The record extract does not include a complete lease agreement.

[5] The Reduction of Lead Risk in Housing Subtitle of the Environment Article currently defines "[a]ffected Property" as "a property constructed before 1978 that contains at least one rental unit[.]" Maryland Code (1982, 2013 Repl. Vol.), Environment Article ("EA"), § 6-801(b). The subtitle's registration and risk reduction requirements apply to affected properties. *See* EA §§ 6-803, 6-811, 6-815. Thus, the age of the subject property is a relevant consideration for the court at the summary judgment stage in a lead-based paint case, although there is no evidentiary presumption that houses built before 1978 contain lead-based paint. *Rowhouses, Inc. v. Smith*, ___ Md. ___, ___, No. 60, September Term 2015, slip op. at 23, 37 (filed Mar. 25, 2016) (citing *Taylor v. Fishkind*, 207 Md. App. 121, 143 (2012)). *See also Smith v. Rowhouses, Inc.*, 223 Md. App. 658, 662 n.7 (2015) ("the age of a property alone is not a sufficient factual basis to support a finding that it contained lead-based paint." (quoting *Hamilton v. Kirson*, 439 Md. 501, 96 A.3d 714 (2014))).

A Maryland Department of the Environment inspection report dated March 29, 1994, states that the Property passed the relevant certification criteria. The Property then received a full risk reduction inspection and passed the certification criteria in 2001. The Property passed further inspections in 2004, 2006, and 2009.

William's blood tested positive for lead several times between December 30, 2003, and June 14, 2007. The highest level readings were 19 micrograms per deciliter on July 16, 2004, and 11 micrograms per deciliter on October 18, 2004.[6]

Ms. Ratchford executed an affidavit in the underlying case on January 20, 2014, describing certain events that occurred in 2004. She averred that, in 2004, the Property's bedrooms, living room, and dining room had "chipping, peeling and flaking paint," and she observed William putting paint chips in his mouth. In her affidavit, Ms. Ratchford further stated:

> 6.    I called the housing manager at my rental office numerous times and complained about the chipping, peeling and flaking paint. **In approximately 2004, after I got one of William's lead tests that showed he had lead in his blood, I was so furious that I went to the rental office and I showed them the results of the lead test. I was so angry that I told the HABC I was going to sue them for poisoning my child.**
> 7.    In response to my threat to sue, the HABC had someone come in to do a lead test. The HABC also had maintenance people come to the house and paint over the chipping, peeling, and flaking paint. I relied on the HABC in believing that this was the only thing they could do in response to my

---

[6] The complete blood-lead level report for William showed the following levels of lead in micrograms per deciliter on the following dates:

| | | | |
|---|---|---|---|
| 12/30/03 – 3 | 7/16/04 – 19 | 10/18/04 – 11 | 1/28/05 – 9 |
| 5/05/05 – 10 | 12/05/05 – 10 | 1/09/06 – 9 | 6/05/06 – 8 |
| 6/14/07 – 7 | | | |

complaints and threat to sue, and that painting over the deteriorated paint would stop William from having lead in his blood.

8. However, the paint kept chipping, peeling, and flaking onto the floor and windowsills. To address the ongoing problem, the HABC had maintenance people come every year to paint over the chipping, peeling, and flaking paint. I relied on the HABC in believing that this regular upkeep would prevent William from having lead in his blood.

(Emphasis supplied).

Nevertheless, Appellants waited until September 6, 2012, to file suit against HABC in the Circuit Court for Baltimore City, alleging negligence and violations of the Maryland Consumer Protection Act.[7]

On January 9, 2015, HABC filed a motion for summary judgment, arguing that Appellants had failed to comply with the LGTCA requirement that one who intends to sue a local government entity must provide notice within 180 days of the tort's occurrence. HABC also contended that Appellants had not demonstrated good cause for waiver of the requirement and that HABC had suffered prejudice as a result of Appellants' failure to comply with the LGTCA. HABC filed with its motion an affidavit by William M. Peach, III, Director of Housing Management Administration, who had been employed by HABC since 1987. The affidavit stated that, before 2011, HABC's record retention policy was to destroy records after three years and that HABC no longer had complete records for the

---

[7] Notably, the complaint also set out a separate, distinct claim for Natonia Ratchford in her personal capacity for her injury due to, among other things, the emotional pain she suffered and the medical bills she had to pay as a result of William's lead poisoning. The summary judgment granted by the circuit court was for "all claims" of "Plaintiffs William Harris and Natonia Ratchford." On appeal the parties present no argument concerning Ms. Ratchford's distinct claim.

Property for the time that William was a resident or visitor of the Property. Mr. Peach's affidavit further averred to his attempts to contact people employed by HABC from 2003-10 in order to find information concerning Appellants' claims:

> 6. Some of the HABC managers involved in the operation and/or maintenance of the property when the Plaintiff claim[s] to have resided at and/or visited there are no longer employed by the HABC. **In cases where I have been able to find current employees of HABC who were in any managerial capacity during the time-frame referenced in Plaintiff's complaint they have been uniformly unable to recall anything about the condition of specific property during the time frames referenced in Plaintiff's Complaints.**

(Emphasis supplied). Mr. Peach affirmed that a search through HABC's records did not reveal any notice of any injury to William due to lead exposure at the Property until the filing of the lawsuit in 2012:

> 7. I have caused a search of all of the HABC's files and records for any complaints, letters, notices or related documentation made by the Plaintiff or anyone in the Plaintiff's family prior to service of suit in this case regarding a claim for damages because of Plaintiff's alleged injurious exposure to lead-based paint at the property during the time the Plaintiff claims to have lived or visited there and I have found none. The first documentary evidence found regarding Plaintiff's claims for damages as a result of alleged injurious exposure to lead-based paint at the property was this lawsuit upon it on September 14th 2012.

The affidavit then stated that because of the untimely notice, HABC was prejudiced because it was not able to perform a physical investigation of the Property during the time of William's alleged injuries:

> 8. Because of Plaintiff's untimely notice, the HABC was deprived of any opportunity to respond to an appropriate statutory notice and conduct a full, litigation-focused, physical investigation of any alleged "defective paint" condition at the property during the time that Plaintiff claims to have resided at and/or visited there and was deprived of any opportunity to document the

alleged defective condition with photographs, or to take depositions for preservation of evidence.

Appellants filed a response in opposition to summary judgment on January 27, 2015, arguing that: (1) Appellants needed additional time to procure expert testimony as to evidence of when facts existed to support each element of Appellants' negligence claim; (2) Appellants substantially complied with the LGTCA's notice requirements; (3) there was good cause to waive the LGTCA's notice requirement; and (4) HABC failed to affirmatively demonstrate prejudice that would preclude waiver of the LGTCA's notice requirement. Appellants attached the affidavit of Ms. Ratchford, quoted at length *supra*, to its response. HABC filed a reply on February 18, 2015.

On February 25, 2015, the circuit court heard oral argument on the motion for summary judgment. HABC argued that there was no strict compliance or substantial compliance with the LGTCA's notice requirement and that an affidavit, by itself, could not equate to substantial compliance. HABC further contended that there was no good cause for waiver of the notice requirement and that HABC would be prejudiced because of the fact that too much time had now passed for HABC to be able to defend the case effectively.

Appellants responded, saying that Ms. Ratchford's oral notice, as set out in the January 20, 2014 affidavit, substantially complied with the LGTCA's notice requirement. Even if it did not, Appellants argued, *inter alia*, that there was also good cause for waiving the notice requirement because there was an elevated blood-lead level and "timely notice of [] chipping, [] peeling, and flaking paint." Appellants further argued that good cause existed because Appellants relied on the fact that HABC had sent a person to check the

Property for lead and painted the Property several times. The court reserved on the ultimate question of summary judgment so that it could deliver a written decision.

In an order entered March 11, 2015, the circuit court granted HABC's motion for summary judgment. The court explained, in its memorandum accompanying the order, that it was more likely that Ms. Ratchford's threat of suit was intended to prod HABC into repairing the Property, rather than an actual threat of legal action, but that, for purposes of summary judgment, the court had to accept as true her statement that she actually intended to file suit against HABC. The court found that Appellants "cannot satisfy the LGTCA notice requirement on the basis of Ms. Ratchford's testimony that she gave notice of an intention to sue orally only."

The court similarly found that Appellants had not demonstrated "good cause" to waive the notice requirement. The court observed the similarity of the facts of this case to those in *Housing Authority of Baltimore City v. Woodland*, 438 Md. 415 (2014), in which the Court of Appeals affirmed a circuit court's finding of good cause under the LGTCA. The court, however, distinguished *Woodland* by noting that, in that case, HABC moved the tenants after they threatened to sue, in distinction to the instant case in which Appellants were not moved to another location. The court then cited *Woodland* for the proposition that a circuit court has wide discretion to determine the presence of good cause. The court stated that a gap of "approximately ten years" between the threat of a lawsuit and the eventual filing of suit did not demonstrate good cause that would excuse non-compliance

with the statutory notice requirement. Appellants timely noted the instant appeal on March 16, 2015.

## DISCUSSION

## I.

## Oral Notice and Substantial Compliance Under the LGTCA

Appellants contend that Natonia Ratchford's oral notice, as sworn to in her affidavit, substantially complied with the LGTCA's notice requirement. Appellants rely on *Ellis v. Housing Authority of Baltimore City*, 436 Md. 331 (2013), *reconsideration denied* (2014), claiming that it supports the proposition that oral notice may be sufficient to substantially comply with the LGTCA's notice requirement. Accordingly, Appellants maintain that the trial court erred in not finding that Ms. Ratchford's oral notice satisfied the test outlined in *Ellis* for substantial compliance.

In riposte, HABC argues that the narrow holdings in *Ellis* did not embrace a determination that oral notice alone could constitute substantial compliance with the notice requirement. HABC presses that no Maryland appellate court has held that oral notice alone is sufficient to substantially comply with the requisites of the LGTCA. Those cases in which substantial compliance has been found have always involved a writing constituting notice within the statutory notice period. HABC maintains that the purpose of the notice requirement is to protect local governments from meretricious claims and that this purpose is eviscerated if oral notice is allowed to constitute substantial compliance with the notice requirement.

We review the trial court's determination as to whether the Appellants substantially complied with the LGTCA's notice requirement as a matter of law. *Woodland*, 438 Md. at 428 (citation omitted)). In 2004, the LGTCA provided, in pertinent part:

> (a) *Notice required.* — Except as provided in subsection (c) of this section, action for unliquidated damages may not be brought against a local government or its employees unless the notice of the claim required by this section is given within 180 days of the injury.
>
> (b) *Manner of giving notice.* — (1) . . . the notice shall be given in person or by certified mail, return receipt requested, bearing a postmark from the United States Postal Service, by the claimant or the representative of the claimant, to the county commissioner, county council, or corporate authorities of a defendant local government, or: (i) In Baltimore City, to the City Solicitor . . . .
>
> * * *
>
> (3) **The notice shall be in writing and shall state the time, place, and cause of the injury.**

Maryland Code (1973, 2002 Repl. Vol.), Courts and Judicial Proceedings Article ("CJP"),[8] § 5-304. (Emphasis added). Therefore, to strictly comply with the LGTCA as it existed in 2004, a plaintiff suing a local government entity had to provide **written** notice of the claim, in person or by certified mail, within 180 days of the injury.[9]

---

[8] Unless otherwise specified, further references to "CJP" in this opinion refer to this replacement volume which was the law in effect in 2004.

[9] The General Assembly has since made amendments to the LGTCA. For example, effective October 1, 2015, a plaintiff now has one year after the injury to provide notice of the claim. 2015 Md. Laws, ch.131 (H.B. 113). This legislative amendment is prospective only. *Id.* There has been no change to the requirement that notice shall be in writing.

A plaintiff who has failed to strictly comply with the LGTCA's notice requirement—as Appellants have done in the present case—may still demonstrate substantial compliance by fulfilling the four-part test laid out in *Ellis*:

> (1) the plaintiff makes "some effort to provide the requisite notice"; (2) the plaintiff does "in fact" give some kind of notice; (3) the notice "provides ... requisite and timely notice of facts and circumstances giving rise to the claim"; and (4) the notice fulfills the LGTCA notice requirement's purpose, which is "to apprise [the] local government of its possible liability at a time when [the local government] could conduct its own investigation, i.e., while the evidence was still fresh and the recollection of the witnesses was undiminished by time, sufficient to ascertain the character and extent of the injury and [the local government's] responsibility in connection with it."

*Ellis*, 436 Md. at 342-43 (brackets in *Ellis*) (quoting *Faulk v. Ewing*, 371 Md. 284, 298-99 (2001)).

In *Ellis*, the Court of Appeals consolidated two cases in which Brittany Ellis and Tyairra Johnson separately sued HABC for negligence and violations of the Maryland Consumer Protection Act arising out of their alleged exposure to lead-based paint. 436 Md. at 337. In Johnson's case, her mother submitted an affidavit stating that, in 1993, she saw her child put chipping paint in her mouth and "immediately complained to a housing manager of [HABC] about chipping paint." *Id.* at 340 (internal quotations omitted). She asked the housing manager to fix the paint issue and "threatened to sue [HABC] if [HABC] did not fix the violations causing injuries to [Johnson]." *Id.* (brackets in original; internal quotations omitted). Seven years later, in 2000, Johnson's mother received a blood-lead level test result for Johnson stating that she had elevated blood-lead levels, and, in 2011, Johnson sued HABC. *Id.*

11

The Court held that Johnson did not substantially comply with the LGTCA's notice requirement for two reasons. *Id.* at 345. First, the Court explained that "Johnson's mother threatened HABC **if it did not fix the chipping paint** . . . ." *Id.* (emphasis in original). There was no substantial compliance because the threat was conditional; "[a] plaintiff does not substantially comply with the LGTCA notice requirement where the plaintiff demands that a local government fix a defect, but neither explicitly nor implicitly indicates that the plaintiff intends to sue the local government regarding an injury resulting from the defect." *Id.* (citing *Halloran v. Montgomery Cnty. Dep't of Pub. Works*, 185 Md. App. 171, 187 (2009)). Second, the Court determined that because Johnson's mother did not learn of the elevated blood-lead level, constituting the injury, until six or seven years *after* the alleged oral notice, it was not possible that her oral notice constituted substantial compliance with the LGTCA's notice requirement because the injury had not arisen until after the threat. *Id.* at 346.

In Ellis's case, the University of Maryland sent Ellis's mother a letter in June 1992 stating that Ellis's blood-lead test revealed 14 micrograms of lead per deciliter. *Id.* at 338. At the same time, HABC also received a University of Maryland form letter containing Ellis's blood-lead level results, but the record was not entirely clear as to how HABC received these test results. *Id.* at 338, 345. In 2010, 18 years after the first blood-lead level test, Ellis sued HABC. *Id.* at 338. The Court observed that there was no indication in the record of any complaint from the Ellis family to HABC concerning lead-based paint hazards. *Id.* at 344. The Court stated that its "conclusion [wa]s unchanged by the

circumstance that HABC received the results of Ellis's first blood-lead level test." *Id.* Because there was no notice from Ellis indicating an intention to file suit, the Court held that there was no substantial compliance. *Id.*

The Court of Appeals rejected both appellants' contentions that HABC had notice of their injuries simply because HABC was legally required to inspect properties for deteriorated lead paint and should have been aware that older dwellings frequently contain lead paint. *Id.* at 347. The Court held that "[a] plaintiff does not substantially comply with the LGTCA notice requirement where the plaintiff does not 'in fact' give some kind of notice." *Id.* at 347 (quoting *Faulk*, 371 Md. at 299).

Returning to the case on appeal, Ms. Ratchford's affidavit does say that she told the HABC in 2004 that she was going to sue them for poisoning her child. Thus, Ms. Ratchford does not run afoul of two of the problems Johnson faced in *Ellis*. The affidavit frames her notice in unequivocal terms and is not conditional on the dwelling being repaired. Further, she had notice of the injury before making the threat because she had the result from one of William's blood tests. If we take Ms. Ratchford's affidavit as true, as we must, we observe that Appellants satisfy the first two of the four requirements presented in *Ellis*, *id.* at 342-43—she did make an effort to provide notice, and she did in fact give some kind of notice.

The issue, therefore, is whether Ms. Ratchford's oral notice substantially complied with the remaining requirements articulated in *Ellis*. We agree with the circuit court, and conclude that the oral notice described in Ms. Ratchford's affidavit did not fulfill the

purpose of the LGTCA notice requirement, which is to apprise the local government unit of potential liability in time for the local government to conduct its investigation. *See id.* at 343 (quoting *Faulk*, 371 Md. at 298-99). The oral notice was insufficient to permit the local government to conduct an investigation that would allow it "'to ascertain the character and extent of the injury and [the local government's] responsibility in connection with it.'" *Id.* (quoting *Faulk*, 371 Md. at 298-99). As the circuit court noted in its memorandum opinion:

> This case illustrates the problem. A plaintiff or a relative of a plaintiff, long after passage of the notice period, might assert by affidavit or in testimony that he or she gave notice orally. The alleged recipient of the notice may have little reason to remember the alleged conversation; indeed, as here, the alleged recipient may not even be identified specifically. A plaintiff should not be able to satisfy what is otherwise a strict statutory requirement on this basis alone.

Appellants aver that, in 2004, Ms. Ratchford informed unknown HABC employees in the rental office that she was going to sue HABC. However, she gave no written notice to any employee or agent of HABC, and Appellants did not file suit until September 6, 2012—eight years later. As Mr. Peach's affidavit notes, HABC had no way, in 2012, to find the alleged recipient of Ms. Ratchford's oral notice. Moreover, Ms. Ratchford's professed oral notice to unidentified HABC rental office employees with unknown authority failed to apprise HABC of its potential liability at a time and in a manner that would have allowed HABC to mount an investigation to determine its own liability, *see Ellis*, 436 Md. at 342-43 (quoting *Faulk*, 371 Md. at 298-99), especially when Appellants did not bring suit until eight years after the alleged oral notice. We conclude that Ms.

Ratchford's oral notice lacking such details could not satisfy the purpose of the statute to "'protect the municipalities and counties of the State from meretricious claimants and exaggerated claims.'" *See Moore v. Norouzi*, 371 Md. 154, 167 (2002) (quoting *Williams v. Maynard*, 359 Md. 379, 389-90 (2000)).

For the foregoing reasons, we hold that Ms. Ratchford's oral notice in 2004 to an unnamed employee in HABC's rental office did not substantially comply with the LGTCA's notice requirement.

## II.

## Good Cause for Waiver

Appellants next argue that the jury, not the judge, is the body responsible for determining good cause, *i.e.*, whether the plaintiff acted with the degree of diligence of an ordinarily prudent person in the same or similar circumstances. In what appears to be an alternative argument, Appellants also argue that it was inappropriate for the circuit court to step into the jury's shoes and make the determination of good cause, or lack thereof, itself. HABC responds that the plain language and the purpose of the LGTCA's notice provision, as well as the case law surrounding it, determine that this is an issue to be decided by the judge, not the jury, before trial. To require that every suit proceed to a jury for a determination of good cause would defeat the purpose of the statute.

The Court of Appeals instructs that we review for abuse of discretion a trial court's conclusion as to whether a plaintiff showed good cause for the plaintiff's failure to comply with the LGTCA notice requirement. *Ellis*, 436 Md. at 348 (citing *Prince George's Cnty.*

*v. Longtin*, 419 Md. 450, 467 (2011)). *See also Rounds v. Maryland-Nat'l Capital Park and Planning Comm'n*, 441 Md. 621, 644-45 (2015) (reviewing for abuse of discretion circuit court's finding that plaintiffs failed to demonstrate good cause). Our task on appeal is not "to decide 'good cause' afresh, but rather, to decide whether the trial court abused its discretion in its good cause determination." *Woodland*, 438 Md. at 434 (citing *Rios v. Montgomery Cnty.*, 386 Md. 104, 121 (2005)). "An abuse of discretion in a ruling may be found 'where no reasonable person would **share the view taken by the trial judge**.'" *Id.* at 435 (quoting *Consol. Waste Indus., Inc. v. Standard Equip. Co.*, 421 Md. 210, 219 (2011)) (emphasis added) (some internal quotations omitted).

Clearly, the applicable standard of review is premised on the assumption that it is the duty of the trial court to determine whether a plaintiff has shown good cause for the failure to comply with the LGTCA's notice requirement. Appellants' contention that the judge inappropriately usurped the role of the jury is plainly without merit according to the applicable statute:

> (c) *Waiver of notice requirement.* — Notwithstanding the other provisions of this section, unless the defendant can affirmatively show that its defense has been prejudiced by lack of required notice, **upon motion and for good cause shown the court may entertain the suit** even though the required notice was not given.

CJP § 5-304(c) (emphasis added).[10] Thus, even when a plaintiff does not strictly or substantially comply with the LGTCA's notice requirement, a trial court may, upon a

---

[10] Because the issue of good cause frequently arises in these cases in a defendant's motion for summary judgment, as it did in this case, we caution future litigants not to conflate the applicable standards. It is the circuit court's responsibility to find—or to not

finding of good cause, waive the notice requirement. *Id.* After a finding of good cause, the trial court may only waive the notice requirement if the defendant cannot affirmatively demonstrate prejudice. *Id.*

Appellants also argue that Article 23 of the Declaration of Rights[11] requires that the good cause issue be submitted to the jury. Appellants analogize the underlying action to a mandamus proceeding and state that, while the ultimate decision of good cause is for the court, the underlying factual issues are for the jury to decide. HABC responds that *Ellis* held that the LGTCA did not violate Article 19 of the Maryland Declaration of Rights,[12]

---

find—whether good cause exists. *See* CJP § 5-304(c) ("upon motion and for good cause shown the court may entertain the suit . . ."). The standard for this limited good cause inquiry is not the summary judgment standard of Maryland Rule 2-501—"no genuine dispute as to any material fact." The circuit court must resolve factual disputes as to good cause, and, once the court makes a finding on whether good cause exists, that finding becomes a relevant (and perhaps the only dispositive) fact in the summary judgment inquiry. That fact is simply no longer disputed, and the question then becomes whether summary judgment is proper.

[11] Article 23 of the Maryland Declaration of Rights provides:

> In the trial of all criminal cases, the Jury shall be the Judges of Law, as well as of fact, except that the Court may pass upon the sufficiency of the evidence to sustain a conviction.
> The right of trial by Jury of all issues of fact in civil proceedings in the several Courts of Law in this State, where the amount in controversy exceeds the sum of $15,000, shall be inviolably preserved.

[12] Article 19 of the Maryland Declaration of Rights provides:

> That every man, for any injury done to him in his person or property, ought to have remedy by the course of the Law of the Land, and ought to have justice and right, freely without sale, fully without any denial, and speedily without delay, according to the Law of the Land.

and that the same reasoning should apply to Appellants' argument under Article 23.[13]  This argument is not preserved.  We have scoured the record without finding any instance of an argument before the circuit court concerning whether Article 23 of the Maryland Declaration of Rights requires the issue of good cause to be submitted to the jury. Maryland Rule 8-131(a) provides that "[o]rdinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court[,]" and we do not depart from this practice now, especially when Appellants cite no Maryland cases in the briefing that suggest Article 23 requires that the issue of good cause be decided by a jury.

We now turn to Appellants' argument that the court erred in its good cause determination.  "A plaintiff shows good cause for his or her failure to comply with the LGTCA notice requirement where the plaintiff '**prosecute[s] his [or her] claim with th[e] degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances**.'"  *Ellis*, 436 Md. at 348 (alteration in *Ellis*) (emphasis supplied) (quoting *Rios*, 386 Md. at 141).  A plaintiff suing a local government also "shows good cause for his or her failure to comply with the LGTCA notice requirement where the plaintiff reasonably relies on 'misleading' representations by a local government."  *Id.* at

---

[13] In Appellants' reply brief, Appellants attempt to clarify that it is not that the LGTCA violates Article 23 of the of the Maryland Declaration of Rights, but that Article 23 "supports to conclusion that when there is a genuine dispute of fact concerning the issue of good cause, it is not an issue for the trial court, but rather, the trial court must submit that issue to the trier of fact."

348-49 (quoting *Rios*, 386 Md. at 141-42).[14] The fact that a plaintiff is a minor at the time of an injury, however, does not, by itself, constitute good cause. *Id.* at 351 (citing *Rios*, 386 Md. at 144). The trial court, knowing the context and facts of the case, is best positioned to determine good cause. *Woodland*, 438 Md. at 435 (citing *Moore v. Norouzi*, 371 Md. 154, 183 (2002)).

In *Woodland*, the appellee child received test results showing elevated blood-lead levels at two time periods in 1997. *Id.* at 422. After the second test, the appellee's mother visited the HABC's management office and discussed the blood test results with the property manager. *Id.* at 422-23. The property manager then requested a modified risk reduction and lead dust test for the subject property. *Id.* at 423. The report resulting from that test recommended relocation, and HABC relocated the appellee and her family. *Id.* Twelve years later, the appellee sued HABC. *Id.* The circuit court found both substantial compliance and good cause to waive the notice requirement. *Id.* at 424.

---

[14] A court may consider the following items in its good cause determination:

> [1] excusable neglect or mistake (generally determined in reference to a reasonably prudent person standard), [2] serious physical or mental injury and/or location out-of-state, [3] the inability to retain counsel in cases involving complex litigation, . . . [4] ignorance of the statutory notice requirement[,] or (5) misleading representations made by representative of the local government.

*Mayor and City Council of Baltimore v. Stokes*, 217 Md. App. 471, 486-88 (2014) (quoting *Wilbon v. Hunsicker*, 172 Md. App. 181, 205-06 (2006)). Appellants do not address these considerations on appeal.

On appeal, the Court of Appeals concluded that the circuit court erred in its substantial compliance finding but nonetheless held that it was not an abuse of discretion for the circuit court to find that the appellee met the good cause exception. *Id.* at 425. The Court stressed that a circuit court has wide discretion whether to find good cause to waive the notice requirement. *Id.* at 434-36. The Court stated "that it was not unreasonable for the trial judge to conclude that Woodland's mother and grandmother acted with a reasonable degree of diligence under the circumstances." *Id.* at 435. The Court explained that ordering the expert inspection of the property and the relocation of the appellee's family could have reasonably induced appellee's family "to believe that they had done enough, in terms of notice" and that "[t]hese circumstances could reasonably have justified, in the trial judge's mind, the conclusion that the Woodland family reasonably relied on HABC's prompt and curative action in not giving additional notice." *Id.* at 436. The Court held that, in those circumstances, the circuit court did not abuse its discretion in finding that the appellee's family had good cause for failing to comply with the LGTCA's notice requirement. *Id.* at 437.

In the instant case, there is no allegation or suggestion of misleading representations by the local government. However, Ms. Ratchford averred in her affidavit that in response to her oral threat, the HABC sent people to do a lead test and "had maintenance people come to the house and paint over the chipping, peeling, and flaking paint." She claimed that she "relied on the HABC in believing that this was the only thing they could do in

response to my complaints and threat to sue, and that painting over the deteriorated paint would stop William from having lead in his blood."

The circuit court, in its memorandum and order, analyzed the foregoing information and found good cause to be lacking. The court distinguished *Woodland*, explaining that, in that case, HABC moved the tenants to another unit after the threat of suit. The present action, however, "was brought approximately ten years after [] Ratchford's threat to sue the HABC." The circuit court explained that the oral complaint in 2004 might satisfy ordinary diligence, but that Ms. Ratchford's failure to follow through with the claim was not reasonable. The court found the lack of tenant relocation in this case important, stating that this "undercut[] any notion that the HABC's response to her threat was so complete as to remove any need to act further." After analyzing the information, the circuit court exercised its discretion in concluding that Appellants had not shown good cause.

We agree with the circuit court, and conclude that it did not abuse its discretion in finding that good cause was lacking, nor did the court inappropriately step into the shoes of the jury. Given the circuit court's wide discretion as enunciated in *Woodland*, *id.* at 434-36, 438, we hold that it was not an abuse of discretion for the circuit court to conclude that Appellants had not demonstrated good cause for a waiver of the LGTCA notice requirement. Unlike in *Woodland*, *id.* at 423, HABC did not move William to a new property, so there is no suggestion that HABC was not required to take any further action to address Ms. Ratchford's alleged oral complaint. Further, the eight-year span of time between the alleged oral notice and the filing of suit evidences a lack of good cause. We

cannot say that no reasonable person would share the view taken by the circuit court. *See id.* at 435 (quoting *Consol. Waste Indus., Inc.*, 421 Md. at 219). As discussed further below, the court did not abuse its discretion in considering the length of time between oral notice and the filing of the complaint.

We conclude the circuit court did not abuse its discretion in not finding good cause to waive the LGTCA notice requirement.

**III.**

**Good Cause Test**

Appellants next argue that the trial court committed reversible error because it misinterpreted the test for good cause. Appellants contend that the time that a plaintiff files suit is irrelevant to a determination of good cause and maintains that the notice issue and the statute of limitations issue are two distinct concepts. Appellants appear to be arguing that considering the time of filing suit is reversible error, thereby implying that it is not subject to an abuse of discretion standard.

HABC responds that the test for a good cause waiver is whether a plaintiff prosecuted a claim "with a degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances." HABC contends that the large amount of time that elapsed between 2004, the date of the alleged oral notice, and 2012, the date of filing suit, demonstrates a lack of ordinary diligence. HABC maintains that

even if another trial judge would have reached a different result, it is not an abuse of discretion for the circuit court to rule as it did here.

As discussed *supra*, "[a] plaintiff shows good cause for his or her failure to comply with the LGTCA notice requirement where the plaintiff '**prosecute[s] his [or her] claim with th[e] degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances**.'" *Ellis*, 436 Md. at 348 (alteration in *Ellis*) (emphasis supplied) (quoting *Rios*, 386 Md. at 141). We conclude that the time of filing suit is patently relevant to determining the degree of a plaintiff's diligence in prosecuting her claim under the LGTCA. Certainly, the Court of Appeals has examined the time between injury and lawsuit in analyzing good cause in the past. *See Ellis*, 436 Md. at 350 (concluding that it was not an abuse of discretion for the circuit court to find that there was no good cause when the appellants waited 18 and 11 years to sue, respectively).

The circuit court determined that good cause for waiver did not exist when Ms. Ratchford complained of William Harris's alleged lead exposure in 2004, but waited until 2012 to file a complaint. The circuit court did not abuse its discretion when it considered the substantial length of time between the alleged oral complaint and the time of filing suit.

## IV.

### Hearsay

Finally, Appellants argue that the trial court committed error in refusing to exclude hearsay from the Peach affidavit in its ruling for summary judgment. Specifically, Appellants take issue with the following statement:

23

6. Some of the HABC managers involved in the operation and/or maintenance of the property when the Plaintiff claim[s] to have resided at and/or visited there are no longer employed by the HABC. **In cases where I have been able to find current employees of HABC who were in any managerial capacity during the time-frame referenced in Plaintiff's complaint they have been uniformly unable to recall anything about the condition of specific property during the time frames referenced in Plaintiff's Complaints.**

(Emphasis supplied). Appellants contend that the foregoing statement is hearsay. HABC responds that the statement is not hearsay because it is only offered for the purpose of demonstrating Mr. Peach's difficulty in finding information concerning the Property and is not offered for the truth of the matter asserted, *i.e.,* that the employees actually do not recall details surrounding the Property. HABC further argues that the trial court never addressed this issue because it did not reach the issue of prejudice to HABC. HABC contends that the statement is only relevant to the issue of prejudice, and that because the court found in favor of HABC on the good cause issue, it never had opportunity to reach the issue of prejudice.

Whether or not evidence is hearsay is an issue we review *de novo*. *Bernadyn v. State*, 390 Md. 1, 8 (2005). Here, we observe at the outset that HABC is correct that prejudice is not at issue until there is a finding of good cause. *See Halloran*, *supra*, 185 Md. App. at 189 ("Such [prejudice] inquiry only arises . . . when a claimant has shown good cause to waive the notice provision, and the burden, by statute, shifts to the local government to show that its defense has been prejudiced. " (citation omitted)). *See also Longtin*, 419 Md. at 467 ("By the language of the statute, the burden is on the claimant first to show 'good cause.' Then, if the local government cannot 'affirmatively show that its

defense has been prejudiced by lack of required notice,' the court 'may' hear the case despite the faulty notice."). A local government entity need not prove that prejudice would result from a failure to provide timely notice until a court has found that good cause exists to waive the requirement of notice. *Id. See also* CJP § 5-304(c) ("Notwithstanding the other provisions of this section, **unless the defendant can affirmatively show that its defense has been prejudiced by lack of required notice**, **upon** motion and for **good cause shown the court may entertain the suit even though the required notice was not given**." (emphasis supplied)). The statement in Mr. Peach's affidavit concerning his difficulty in finding employees who had any knowledge of the condition of specific property during the time frame of William's alleged injury is relevant to prejudice, not good cause. The circuit court granted summary judgment because Appellants did not demonstrate good cause and, therefore, did not reach the prejudice inquiry. Because the court did not consider prejudice, the alleged hearsay statement was not relevant to the grounds upon which summary judgment was granted.[15]

---

[15] HABC contends Mr. Peach's statement was not hearsay because it was not offered to prove the truth of the matter asserted, *i.e.*, whether the employees failed to recall the condition of the Property, but rather, to show the difficulty he encountered so many years later finding any information about the condition of the Property. We agree. Maryland Rule 5-801(c) defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to **prove the truth of the matter asserted**." (Emphasis supplied). Mr. Peach's statement was offered to demonstrate the difficulty that Mr. Peach encountered in investigating the facts surrounding Appellants' claim, most of which took place in 2004. Whether those employees are telling the truth about their recollection is irrelevant to Mr. Peach's professed hardship in tracking down information, and the salient fact is that he found it very difficult to find employees who had any knowledge of the Property during the times at issue in this case. *See Stewart v. State*, 342 Md. 230, 236 (1996) (citing *Ali v. State*, 314

For the foregoing reasons, we affirm the circuit court's grant of summary judgment.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED.**

**COSTS TO BE PAID BY APPELLANTS.**

---

Md. 295, 304 (1988)) ("when an out-of-court statement is offered for a purpose other than to prove the truth of the matter asserted . . . the statement is not hearsay."); *Dyson v. State*, 163 Md. App. 363, 373 (2005) (citations omitted) ("whether an out-of-court statement is hearsay depends on the purpose for which it is offered at trial.").